FILED
United States Court of Appeals
Tenth Circuit

December 15, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DENISE L. ZARICOR-RITCHIE,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

Defendant-Appellee.

No. 11-5074
(D.C. No. 4:08-CV-00075-TLW)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

Denise L. Zaricor-Ritchie appeals the Commissioner's denial of disability

benefits and Supplement Security Income. We exercise jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Zaricor-Ritchie claimed she was disabled by bipolar disorder and depression with an onset date of March 23, 2004. After administrative denials of her claims for benefits, she had two hearings before an ALJ, who concluded she was not disabled at step four of the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process). The ALJ found she had two severe impairments, depression and personality disorder, but none that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). Of particular relevance to this appeal, the ALJ found that she did not meet the "Paragraph B" criteria of certain adult mental impairment Listings because she was not markedly or severely limited in any functional areas and had no episodes of mental decompensation of extended duration. He also considered her obesity in combination with her depression, but concluded that she still did not meet or equal any of the Listings. The ALJ then found that Ms. Zaricor-Ritchie possessed the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following nonexertional limitations: only perform simple, repetitive tasks and incidental contact with the public." Aplt. App., Vol. 3 at 305 (bolding omitted). The ALJ found at step four that Ms. Zaricor-Ritchie could return to her past relevant work as a dishwasher. The Appeals Council denied review, and a magistrate judge,

acting on the parties' consent, affirmed. Ms. Zaricor-Ritchie then appealed to this court.

## II.    DISCUSSION

Ms. Zaricor-Ritchie raises three issues on appeal: (1) the ALJ erred in his treatment of the medical source evidence; (2) the ALJ erred in his credibility assessment; and (3) the ALJ failed to perform a proper analysis in concluding that she could return to her past relevant work as a dishwasher. We address the issues in order. Our task in reviewing the Commissioner's decision is to determine "whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall*, 561 F.3d at 1052 (quotation marks omitted). In conducting our review, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . , but we [do] not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

### A.    Medical Source Evidence

Ms. Zaricor-Ritchie first contends the ALJ erred in his treatment of a Mental Residual Functional Capacity Assessment (MRFCA) prepared in September 2006 by Ms. Honeyman, a Licensed Marriage and Family Therapist (LMFT) she saw at the Edwin Fair Community Mental Health Center. Ms. Honeyman concluded that Ms. Zaricor-Ritchie was mildly impaired in one functional area, markedly impaired in six functional areas, and severely impaired

in thirteen functional areas. At the second ALJ hearing, a vocational expert (VE) testified that a person with such severe limitations could not perform any work. In his decision, the ALJ acknowledged that Ms. Zaricor-Ritchie routinely saw Ms. Honeyman but stated that her opinion was "inconsistent with the evidence of record, as well as the counselor's own treatment notes (Exhibits 6F/9F/10F)." Aplt. App., Vol. 3 at 308.

Ms. Zaricor-Ritchie argues that the ALJ erred by not stating how Ms. Honeyman's opinions differed from other substantial evidence in the record or her own treatment notes. This argument implicates two of the factors that can be used to evaluate the opinions of "other sources" such as therapists: "the degree to which the . . . opinion is supported by relevant evidence" and "consistency between the opinion and the record as a whole." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (quotation omitted) (summarizing 20 C.F.R. §§ 404.1527(d)(3)-(4) and 416.927(d)(3)-(4)); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007) (discussing SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006), which states that the regulatory factors used to determine the weight to be afforded to the opinion of an acceptable medical source, set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d), can be applied to the opinions of "other sources" such as therapists).

We see no error. The ALJ discussed other evidence in the record, none of which showed that Ms. Zaricor-Ritchie was markedly or severely limited in any

areas of mental functioning.  First, the ALJ discussed the November 2004 report of psychologist Robert S. Schlottmann, Ph.D., a consulting examiner, noting that "Dr. Schlottmann found [her] to be functioning in the low average range of intelligence."  Aplt. App., Vol. 3 at 307.  The ALJ also recited Dr. Schlottmann's findings that Ms. Zaricor-Ritchie suffers "from major depression, moderate, recurrent; dysthymic disorder; polysubstance abuse; personality disorder with histrionic and dependent features; . . . with a GAF [Global Assessment of Functioning score] of 50."  *Id.*

In addition to the specific details set out in the ALJ's decision, Dr. Schlottmann recorded that Ms. Zaricor-Ritchie "feels suicidal all the time." Aplt. App., Vol. 2 at 136.  She was "oriented to time, person, and place," but had "some difficulty concentrating and attending."  *Id.* at 137.  "She was able to repeat five digits forward and four backward and able to count backward from 100 by 3's, but she had some difficulty repeating sentences and following a simple three-step command."  *Id.*  It appeared "her recent memory [was] intact" because "[s]he was able to learn a list of five words on two trials, and later she was able to recall all of them."  *Id.*  Dr. Schlottmann observed that Ms. Zaricor-Ritchie's "responses to questions involving general knowledge indicated that she seems to have a poor fund of information," and she achieved "mixed" results in her response to "questions involving common sense and judgment in practical situations."  *Id.*

We see nothing in Dr. Schlottmann's report tending to support the marked or severe functional limitations in Ms. Honeyman's MRFCA. Even the GAF score of 50 does not amount to substantial evidence supportive of the degree of limitation reported in Ms. Honeyman's MRFCA. This is because a GAF score of 50 indicates "[s]erious symptoms (e.g., *suicidal ideation*, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Rev. 4th ed. 2000) (DSM-IV) (italic emphasis added) (bolding omitted). Thus, Dr. Schlottmann could have based the GAF score on either his awareness of Ms. Zaricor-Ritchie's claimed suicidal ideation *or* a serious impairment in social or occupational functioning of the sort Ms. Honeyman reported. However, as recounted, nothing in his report indicates a serious impairment in social functioning.

The ALJ also discussed the report of Burnard L. Pearce, Ph.D., a non-examining source who completed a Psychiatric Review Technique (PRT) form and an MRFCA in November 2004. In his PRT, Dr. Pearce's evaluation of Ms. Zaricor-Ritchie's specific mental impairments largely tracked Dr. Schlottmann's. Dr. Pearce also checked boxes that she was mildly restricted in activities of daily living (ADLs); had moderate difficulties in maintaining social functioning; had mild difficulties in maintaining concentration, persistence

or pace; and insufficient evidence of episodes of decompensation of extended duration. Aplt. App., Vol. 2 at 150. As Ms. Zaricor-Ritchie points out, Dr. Pearce's written comment that Ms. Zaricor-Ritchie was "moderately restricted" in her ADLs, *id.* at 152, was inconsistent with his checked-box finding that she was only mildly restricted in her ADLs. We see no consequence to this internal inconsistency, as even moderate restrictions in ADLs are insufficient for a mental impairment to meet or equal the "Paragraph B" criteria of the mental impairment Listings the ALJ considered at step three. Further, to the extent Ms. Zaricor-Ritchie's activities of daily living affected the ALJ's RFC, the ALJ made his own assessment of her ADLs based not only on the medical evidence but on his evaluation of her credibility (discussed below). Accordingly, the minor inconsistency in Dr. Pearce's PRT had no discernible substantive effect on the ALJ.

In his MRFCA, Dr. Pearce found nothing more severe than moderate limitations in her ability to understand, remember, and carry out detailed instructions, *id.* at 154, and in her ability to interact appropriately with the public, *id.* at 155. Ms. Zaricor-Ritchie argues that Dr. Pearce's finding that she was not significantly limited in understanding, remembering, and carrying out short and simple instructions conflicts with Dr. Schlottmann's finding that she had difficulty performing a simple three-step command. However, Dr. Schlottmann found only that she would have "some difficulty" in performing such a command,

*id.* at 137, and the ALJ's RFC accounted for this difficulty by limiting Ms. Zaricor-Ritchie to "simple, repetitive tasks," *id.*, Vol. 3 at 305 (bolding omitted).

Turning to Ms. Honeyman's own treatment notes, the ALJ cited to the exhibit containing them but provided no discussion of them. We see no reason to depart from our general practice "to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). We have reviewed those notes signed by Ms. Honeywell, which amount to six progress notes from treatment sessions for low self esteem and communication problems in July and August 2006, *see* Aplt. App., Vol. 2 at 229, 231-33, 235-36; and two referrals to a medication clinic, *see id.* at 230, 234. Nothing in those notes indicates marked or severe limitations in any functional areas as reported in Ms. Honeyman's September 1, 2006, MRFCA. The notes contain comments such as "low self esteem," "poor hygiene," "no energy or motivation," "eye contact was continual & her posture was relaxed," *id.* at 236; "using rapid speech and eye contact was good," "she switched subjects frequently," "moderate progress was made due to short attention span," *id.* at 235; "rigid & stiff posture & movements, elevated speech, clenched fists, narrow eye contact," "posture was relaxed & eye contact was continual," *id.* at 233; "eye contact was sporadic & her posture was rigid," "moderate progress was made due to needing reminders to stay focused," *id.* at 232; "eye contact was continual &

her posture was slumped," "moderate progress was made due to being distracted easily & forgetting her objectives & needing reminders," *id.* at 231; "eye contact was continual & her posture was slumped," "moderate progress was made due to short attention span & changing subjects frequently," *id.* at 229. Thus, because Ms. Honeyman's notes do not contain any evidence that the ALJ had to reject or weigh in order to discount the severity of the restrictions in her MRFCA, his failure to discuss those notes in detail is not error. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (stating that, when the medical evidence does not conflict with an ALJ's conclusion, "the need for express analysis is weakened").

Ms. Zaricor-Ritchie also contends that the treatment notes of other Edwin Fair therapists substantiate Ms. Honeyman's MRFCA. In support, she references large swaths of the record "as summarized in [her] *Statement of Facts*." Aplt. Opening Br. at 23. However, the notes she describes in detail in her statement of facts consist primarily of her own subjective reports. The only other "note" to which she refers that might "substantiate" Ms. Honeyman's MRFCA is a discharge summary dated January 19, 2007, on which Ms. Honeyman noted that her GAF score was 25 at both admission and discharge. A GAF score in the 21-30 range indicates "[b]ehavior [that] is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR

inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." DSM-IV at 34 (bolding omitted). However, an October 2006 treatment note reports that although depressed, Ms. Zaricor-Ritchie "was not delusional," "did not report any hallucinations," and denied suicidal thoughts. Aplt. App., Vol. 3 at 444. And nothing in that note or any others in the months leading up to her discharge suggests more generally any impairment consistent with the DSM-IV's description of a GAF score in the 21-30 range. Moreover, in the "needs and preferences" section of the discharge summary itself, Ms. Honeyman stated only that Ms. Zaricor-Ritchie needs "anger management." *Id.* at 438. Thus, we see nothing supporting a GAF score of 25, and therefore the score itself does not substantiate Ms. Honeyman's MRFCA.

## B. Credibility Determination

Ms. Zaricor-Ritchie next takes issue with the ALJ's credibility determination. She first claims the ALJ applied an incorrect standard of proof when he stated that one of "two factors [that] weigh against considering [her] allegations of fairly limited ADLs] to be strong evidence in favor of finding [her] disabled" was that her "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." *Id.* at 308. We rejected the same argument concerning the identical wording in *Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009). We noted that the ALJ "made this statement subsequent to, and thus in light of, his adverse [credibility] determination." *Id.* at 1069. We then

-10-

concluded that the ALJ's statement "did not state a standard by which the ALJ made his adverse [credibility] determination" but was instead "merely a common sense observation that the ALJ would not treat Claimant's testimony as 'strong evidence' of her disability due to his prior determination that [her] testimony was not 'fully credible.'" *Id.* at 1070. We ultimately determined that the ALJ fulfilled his duty to "closely and affirmatively link[]" his credibility determination to "substantial record evidence." *Id.*

For the reasons explained in *Wall*, we conclude that the ALJ did not rely on an improper standard by his reference to "objectively verified with any reasonable degree of certainty." Further, we conclude that the ALJ's credibility determination was "closely and affirmatively linked to substantial record evidence." *Id.* The ALJ considered Ms. Zaricor-Ritchie's ability to perform certain ADLs, specifically to do some household chores, attend to her personal hygiene, and drive. Although minimal ADLs alone do not constitute "substantial evidence that a claimant does not suffer disabling pain," an ALJ may consider ADLs as part of his evaluation of a claimant's credibility. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220-21 (10th Cir. 2004) (quotation marks omitted). The ALJ did not solely rely on Ms. Zaricor-Ritchie's ADLs but instead evaluated them as part of his credibility analysis. The ALJ also noted that record evidence showed medications effectively controlled Ms. Zaricor-Ritchie's symptoms. For example, she informed her therapist at a session on March 7, 2005, that she was feeling

-11-

"really good," and that her "meds [were] kicking in." Aplt. App., Vol. 2 at 255. On another occasion, apparently when she had been off her medications for two months because she couldn't afford them, she reported that she thought her "medication was working" and that she could not "function without it." *Id.* at 187. And an Edwin Fair psychiatrist noted that Ms. Zaricor-Ritchie thought the antidepressant Lexapro "worked well for her." *Id.*, Vol. 3 at 444. Although Ms. Zaricor-Ritchie testified that medication did not seem to fix her bipolar disorder, *id.* at 320, the ALJ was free to disbelieve her in light of her other statements to her therapists.

Ms. Zaricor-Ritchie also raises a number of complaints about the ALJ's handling of certain other evidence allegedly related to her credibility. She claims it was improper for the ALJ to rely on the fact that her "doctors did not write in their notes that she was disabled or that she had a[n] RFC less than the one he had assigned." Aplt. Opening Br. at 26. This is a selective reading of the ALJ's statement that "other than [Ms. Honeyman's MRFCA], the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or that she even has limitations greater than those determined in this decision." Aplt. App., Vol. 3 at 308. We read the ALJ's observation to be part of his analysis of why the marked and severe limitations in Ms. Honeyman's MRFCA were inconsistent with the other record evidence—because none of the

other evidence suggested similarly severe limitations—and not part of his credibility determination.

Ms. Zaricor-Ritchie next takes issue with the ALJ's observation that her treatment was "conservative in nature," *id.* at 309, claiming this violates the familiar principle that an ALJ may "not interpose his own 'medical expertise' over that of a physician." *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987). We disagree. An ALJ can take note of the level of treatment in assessing a claimant's credibility. *See Hackett*, 395 F.3d at 1173 (approving ALJ's reliance on fact that claimant "had responded to conservative treatment" as part of credibility evaluation); 20 C.F.R. § 404.1529(c)(3)(v) (listing "[t]reatment" as one factor that may be considered when evaluating symptoms); *id.* § 416.929(c)(3)(v) (same). He did no more than that here. On a related note, Ms. Zaricor-Ritchie faults the ALJ for noting that "she has required no inpatient hospitalizations," Aplt. App., Vol. 3 at 309, claiming this overlooks that she was twice hospitalized after suicide attempts. However, the only record evidence related to any such hospitalizations is a June 2006 note recording that she told her counselor about it. *Id.*, Vol. 2 at 240. Lacking any record substantiation of these alleged hospitalizations, we cannot say the ALJ erred in observing "she has required no inpatient hospitalizations." Ms. Zaricor-Ritchie further contends the "ALJ ignored [her] visits to doctors and emergency rooms for various injuries, which makes her testimony credible." Aplt. Opening Br. at 27. But the evidence she

cites in support relates to a variety of physical injuries, including a broken foot and a strained neck, and lends no support to the credibility of her testimony regarding the severity of her mental impairments.

The ALJ also considered Ms. Zaricor-Ritchie's testimony that her husband described her as "lazy," from which the ALJ reasoned that, "if [her] disabilities were as severe as [she] professes, the husband would see this and not simply state she was lazy." Aplt. App., Vol. 3 at 309. Ms. Zaricor-Ritchie complains that her husband is not a qualified medical expert. However, an ALJ may consider lay witness statements. *See Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006). Moreover, the ALJ made his observation with regard to her allegations of disabling physical impairments, which Ms. Zaricor-Ritchie did not press in the district court or in this appeal, not with regard to her credibility concerning the severity of her mental impairments.

Next, Ms. Zaricor-Ritchie claims the ALJ miscast the record evidence when he "faulted [her] for not going to free clinics, ignoring that she did." Aplt. Opening Br. at 28. We assume she is referring to the ALJ's observation that, "*at the time of the hearing*," she was "'unable to see a doctor,' because she has no insurance," and his conclusion that "it [is] reasonable to assume that if the claimant were truly in need of medical care, she would exhaust every means possible to obtain such services," including "public facilities available to those who do not have insurance or who are unable to pay for medical care. . . . [T]here

-14-

are no references within the record that [she] has sought out these types of facilities." Aplt. App., Vol. 3 at 309 (emphasis added). Clearly, the ALJ was referring to her failure to seek free treatment at the time of the hearing. It is equally clear that the ALJ did not ignore that Ms. Zaricor-Ritchie had received free treatment at Edwin Fair in the past, commenting earlier in his decision that she had not returned to Edwin Fair for more than six months after moving back to the clinic's locality, and that her explanation was "that she has meant to go back, but she hasn't been able to get up and do that. She would have to go through input and all that." *Id.* at 307. Ms. Zaricor-Ritchie claims the ALJ overlooked her testimony that she was too depressed to return to Edwin Fair, but the ALJ's remark that she was not "able to get up and [return]" to Edwin Fair, *id.*, indicates otherwise.

Finally, Ms. Zaricor-Ritchie claims the ALJ ignored the side effects of her medication, apparently increased appetite that allegedly resulted in a weight gain of forty pounds. However, she has not argued that the ALJ overlooked or improperly evaluated her obesity. She also claims the ALJ overlooked her testimony that her medications made her "wirey," but she has not indicated how being "wirey" might affect the ALJ's decision.

In sum, the ALJ closely and affirmatively linked his adverse credibility finding to substantial evidence in the record and did not employ an incorrect legal standard. "Our precedents do not require more, and our limited scope of review

precludes us from reweighing the evidence or substituting our judgment for that of the agency." *Wall*, 561 F.3d at 1070 (quotation marks omitted) (brackets omitted).

### C. Past relevant work

The ALJ determined at step four that Ms. Zaricor-Ritchie could return to her past relevant work as a dishwasher. She complains that the ALJ's failure to make a specific finding about the mental demands of the dishwashing job or inquire of the vocational expert about those demands runs afoul of our decision in *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). We disagree.

In *Winfrey*, we described the three-phases of a step-four analysis. At phase one, an ALJ must determine the claimant's RFC. It is uncontested that the ALJ did so. At phase two, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Id.* at 1024. To make such findings, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations.'" SSR 82-62, 1982 WL 31386, at *3 (1982). The ALJ's phase-two task is case-dependent. *See id.* ("Detailed information about . . . mental demands [of past relevant work]. . . must be obtained *as appropriate*." (emphasis added)).

The only medically established limitations at issue in our *Winfrey* analysis are the ALJ's findings that Ms. Zaricor-Ritchie could "only perform simple, repetitive tasks" and have only "incidental contact with the public." Aplt. App.,

-16-

Vol. 3 at 305 (bolding omitted).  Thus, the ALJ needed only to obtain enough information regarding those limitations to determine whether Ms. Zaricor-Ritchie could perform her past relevant work as a dishwasher despite them.  *Winfrey*, 92 F.3d at 1025.  This he did.  The VE agreed with the ALJ that the dishwashing job was unskilled.  As relevant to the identified mental limitations, an unskilled job is "work which needs little or no judgment to do *simple duties*."  20 C.F.R. § 404.1568(a) (emphasis added).  Such work "ordinarily involve[s] *dealing primarily with objects*, *rather than with* data or *people*."  SSR 85-15, 1985 WL 56857, at *4 (1985) (emphasis added).  Thus, the ALJ had sufficient information regarding the mental demands of Ms. Zaricor-Ritchie's dishwashing job relevant to the mental limitations in her RFC—"simple, repetitive tasks" and only "incidental contact with the public."  Aplt. App., Vol. 3 at 305.

In phase three of the *Winfrey* analysis, the ALJ must make findings about a claimant's "ability to meet the mental demands of [her] past relevant work despite [her] mental impairments."  *Winfrey*, 92 F.3d at 1025.  In making the phase-three findings, an "ALJ may rely on information supplied by the VE at step four," but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work."  *Id.* In his written decision, the ALJ relied on the VE's testimony, which was consistent with the information in the *Dictionary of Occupational Titles*, in comparing Ms. Zaricor-Ritchie's RFC with the physical and mental demands of

-17-

the dishwashing job and found that she could perform that job as actually performed despite the identified mental impairments. Such reliance is entirely permissible. *See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (finding no *Winfrey* error where ALJ relied on VE's testimony in support of the ALJ's own phase-two and phase-three findings). Consequently, we conclude that the ALJ's *Winfrey* analysis was sufficient.

The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Senior Circuit Judge