**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHELLE BEST-WILLIE,

       Plaintiff–Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

       Defendant–Appellee.

No. 12-4069
(D.C. No. 1:10-CV-00176-PMW)
(D. Utah)

---

**ORDER AND JUDGMENT**[**]

---

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

    [*] In accordance with Federal Rule of Appellate Procedure 43(c)(2), Carolyn
W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this
action.

    [**] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Michelle Best-Willie appeals from an order of the district court affirming the denial of her application for disability benefits under the Social Security Act. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

**I**

In January 2007, Best-Willie began experiencing right-sided abdominal pain. Over the next several months, she sought medical care from numerous providers and underwent medical work-ups including CT scans of her abdomen and pelvis, upper endoscopy, colonoscopy, capsule enteroscopy, urological testing, and multiple chemistry panels. Her medical testing did not reveal abnormal findings and the etiology of her abdominal pain could not be determined.

Best-Willie filed for disability benefits in June 2007. She claimed that due to her abdominal pain, she could not sit for more than an hour, walk without assistance, travel, or do any lifting. She was forty-three years old at the time of her application. She has a bachelor's degree and has worked in customer service technical support as an end-user consultant, and previously as a photocopy machine operator.

In August 2007, the Commissioner denied Best-Willie's application. Best-Willie continued seeking treatment for her abdominal pain, which was ultimately determined to have a psychological component. In February 2008, she began treatment with a psychiatrist who diagnosed her with depression, anxiety, and

a somatoform pain disorder[1] and prescribed medication.  Her application for benefits was denied on reconsideration in August 2008.

In August 2009, an administrative law judge ("ALJ") found Best-Willie not disabled at step four of the controlling five-step sequential analysis.  See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits).  The ALJ confirmed that Best-Willie had not worked since her alleged onset of disability, January 25, 2007, through her date last insured, December 31, 2012.  She found Best-Willie had the following severe impairments:  mild degenerative disc disease of the spine, morbid obesity, sleep apnea, left carpal tunnel syndrome, asthma, major depression, generalized anxiety disorder, and somatoform pain disorder.  However, the ALJ concluded that these impairments did not meet or equal the listings for presumptive disability.

The ALJ also found Best-Willie not credible and determined that her impairments left her with a residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with some postural limitations and moderate mental limitations.  Relying on the Dictionary of Occupational Titles and

---

[1] A somatoform disorder exists when there are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. 404, Subpt. P, App. 1, § 12.07.  A somatoform pain disorder is indicated where pain is the predominant complaint, warrants clinical attention, and causes significant impairment in social or occupational functions.  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) 485, 498 (4th ed. 2000).

testimony of the vocational expert, the ALJ concluded at step four that Best-Willie was not disabled because she could still perform her past relevant work as a photocopy machine operator. Continuing to step five, the ALJ determined in the alternative that Best-Willie possessed the RFC to perform other work in the national economy.

Best-Willie's request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision. Doyal v. Barnhart, 331 F.3d 758, 759 (10th Cir. 2003). The district court affirmed the Commissioner's denial of benefits, and Best-Willie appeals.

## II

"In reviewing the [Commissioner's] decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004) (quotation omitted). Rather, "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Watkins v. Barnhart, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084 (citation and quotations omitted).

Best-Willie raises the following challenges to the Commissioner's decision: the ALJ erred (1) in rejecting the opinions of her treating physicians, Drs. Hall and

4

Charlat; (2) in concluding that she did not meet Listing 12.06 (Anxiety Related Disorders); (3) in evaluating the credibility of her complaints of pain; (4) in failing to consider the lay witness statement of her husband; and (5) at steps four and five of the sequential analysis.

## A

Best-Willie challenges the ALJ's evaluation of medical source opinions offered by her treating physicians, Drs. Hall and Charlat. When analyzing the opinion of a treating physician, the ALJ first considers "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other substantial evidence in the record. Watkins, 350 F.3d at 1300 (quotation omitted); see also 20 C.F.R. § 404.1527(c)(2). If so, the ALJ must give the opinion "controlling weight." Watkins, 350 F.3d at 1300. If the opinion is not entitled to controlling weight, the ALJ should weigh the opinion considering the six factors listed in 20 C.F.R. § 404.1527(c)(2)[2] to determine "whether the opinion

---

[2] These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (quotation omitted).

should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). Finally, "[i]n all cases the regulations require that the ALJ give good reasons in the notice of determination or opinion for the weight that is given the treating physician's opinion." Doyal, 331 F.3d at 762 (quotation omitted).

Dr. Hall was Best-Willie's primary care physician who treated her for asthma, diabetes, acid reflux, musculoskeletal pain, and right-sided abdominal pain from January 2007 to December 2007.[3] Dr. Hall's March 2009 "Doctor's Opinion" form and RFC form noted that Best-Willie suffered from right lower quadrant pain, fatigue, depression, and anxiety. He determined that Best-Willie's pain symptoms would interfere with her attention and concentration, and that she was incapable of even low-stress jobs. He limited her to sitting for thirty minutes at a time, standing to one hour at a time, sitting and standing/walking to less than two hours in an eight hour work day, needing to walk every ten minutes for ten minutes at a time, needing to shift postural positions, needing to keep her legs elevated up to two hours per day, never lifting or carrying any weight, and rarely stooping, crouching, or climbing. He also noted that due to her impairments, Best-Willie would miss more than four days of work each month.

---

[3] Other than these records, Dr. Hall wrote a "to whom it may concern letter" in February 2009, opining that Best-Willie had diabetes and arthritis, and would benefit from the use of a wheelchair and transportation accommodations.

Best-Willie argues that the ALJ "summarily dismissed" Dr. Hall's 2009 assessment of her functional limitations without providing sufficient support. We disagree. Before evaluating Dr. Hall's opinion, the ALJ thoroughly addressed the medical evidence provided by other physicians who had examined Best-Willie for her complaints of abdominal pain and other issues related to back and neck pain. Referencing records from Drs. Foley, Batista, Hall, Durbin, Sadiq, and several other clinics, the ALJ noted that these medical records revealed Best-Willie's "ongoing [medical] office visits and emergency room visits for abdominal and bowel issues, as well as orthopedic and breathing issues." Moreover, the ALJ observed that "despite extensive workup, which has included multiple chemistry panels, multiple CBCs, multiple CT scans, urologic evaluation, endoscopy, colonoscopy, small bowel follow-through, capsule enteroscopy and IVP x-ray, all findings have been within normal limits and the etiology of her abdominal pain is still unknown." Our review of the record reveals the same.

The ALJ also discussed issues concerning Best-Willie's left wrist pain, neck pain, back pain, and associated neurological issues and noted that diagnostic findings and EMG studies were within normal limits. The ALJ considered an October 2007 report by Dr. Sadiq, a neurologist, who found that Best-Willie's neck and back pain were stable and she had mild external peripheral neuropathy. As pointed out by the ALJ, there was no further evidence submitted after this report concerning treatment for neck and back issues.

In addition, the ALJ evaluated medical evidence regarding Best-Willie's mental impairments. She discussed Dr. Swaner's February 2008 psychological consultative examination, in which Dr. Swaner diagnosed Best-Willie with an adjustment disorder with depressed mood, a pain disorder associated with both psychological factors and a general medical condition, and assessed a global assessment function of sixty-five, which the ALJ stated "indicate[d] no more than mild symptoms/impairment."[4] The ALJ also discussed Best-Willie's psychiatric treatment beginning in February 2008 with Dr. Charlat. Dr. Charlat's records revealed that by April 2008 Best-Willie experienced with medication an alleviation of her depressed mood, good suppression of her anxiety and somatoform pain disorder, and good prognosis for returning to regular employment. Dr. Charlat's November 2008 treatment note, the last treatment note for psychiatric care in the record, was essentially the same.

As to Dr. Hall, the ALJ stated that his opinions concerning Best-Willie's "extremely limited residual functional capacity" and inability to work were not entitled to controlling weight because the opinions were not supported by medically acceptable clinical and diagnostic techniques. Moreover, the ALJ found Dr. Hall's opinion inconsistent with medical evidence in the record as well as with his reports

---

[4] The ALJ's assessment is correct. Under DSM-IV, a global assessment function of sixty-five indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

because his examinations and diagnostic testing were within normal limits. Thus the ALJ afforded Dr. Hall's opinion "little weight."

Nevertheless, Best-Willie argues the ALJ did not "specifically identify what other evidence allegedly contradicted Dr. Hall's assessed limitations." We discern no error. As discussed above, the ALJ thoroughly discussed the medical evidence in the record, which demonstrated that there was "very little objective evidence to support claimant's very severe and extreme alleged functional limitations due to her physical and mental impairments." Although there was not a contemporaneous discussion of this evidence in discounting Dr. Hall's opinion, in reading the ALJ's decision as a whole, it is evident Dr. Hall's opinion is inconsistent with the record.

Best-Willie also argues that the ALJ summarily rejected Dr. Charlat's opinion without sufficient support. Again, we disagree. The ALJ stated that Dr. Charlat's opinions concerning Best-Willie's "extreme mental limitations in maintaining concentration, persistence and pace" and his opinion that she would miss more than four days per month due to mental impairments were not entitled to controlling weight. The ALJ found Dr. Charlat's opinion unsupported by medically acceptable clinical and diagnostic techniques and inconsistent with the record. For example, Dr. Charlat's June 5, 2008 RFC evaluation was inconsistent with his treatment note on June 6, the next day, in which he concluded that with medication Best-Willie had "alleviation of her depression, suppression of her generalized anxiety, suppression of her somatoform disorder [and that the prognosis was good for] being able to return to

9

regular employment." In general, the ALJ stated that treatment notes and examinations "show a degree of limitation but not to the point suggested by Dr. Charlat." The record demonstrates that Best-Willie's somatoform pain disorder was suppressed with medication, and the ALJ appropriately considered this in discounting Dr. Charlat's opinion.

**B**

Best-Willie also claims error at step three. Specifically, she asserts that the ALJ failed to conclude she met Listing 12.06 (Anxiety Related Disorders) because the ALJ "failed to acknowledge" Dr. Charlat's opinion that Best-Willie had a complete inability to function independently outside of her home.

"At step three, the determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." Lax, 489 F.3d at 1085 (citations, quotations, and alteration omitted). A claimant will only be presumed disabled if an impairment, or a combination of impairments, meets or equals all the requirements of a listing. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). Further, a claimant has the burden to present evidence establishing her impairments meet or equal listed impairments. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).

Best-Willie was diagnosed with generalized anxiety disorder, which is compared to Anxiety Related Disorders, the impairment listed under 12.06. For the ALJ to have found that Best-Willie's mental limitation met the required level of severity under 12.06, Best-Willie had to satisfy requirements under 12.06(A) and 12.06(B),[5] or alternatively, 12.06(A) and 12.06(C). See 20 C.F.R. 404, Subpt. P, App. 1, § 12.06. Under 12.06(C), paragraph C, Best-Willie was required to show that the mental limitation "[r]esult[s] in complete inability to function independently outside the area of one's home." § 12.06(C). The ALJ determined Best-Willie did not meet these criteria.

We reject Best-Willie's claims that the ALJ failed to acknowledge Dr. Charlat's opinion that she could not function outside of her home, and that the ALJ provided no explanation for her determination that paragraph C was not satisfied. Although the ALJ did not expressly address the opinion of Dr. Charlat in her step three analysis, the ALJ's findings in other parts of the decision support her determination that Best-Willie is not presumptively disabled at step three. See Fischer-Ross, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential

---

[5] Under 12.06(B), Best-Willie's limitation had to result in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R. 404, Subpt. P, App. 1, § 12.06(B). The ALJ concluded Best-Willie did not meet the criteria of § 12.06(B). Best-Willie does not argue on appeal that she meets these criteria.

11

process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

For example, in determining Best-Willie's RFC at step four, the ALJ considered medical opinion evidence, including Dr. Charlat's determination that Best-Willie had a complete inability to function independently outside of her home. Though the ALJ did not expressly state this opinion in her decision, she did state that she considered all of the evidence in the record and the medical evidence in accordance with the regulations. As is our general practice, we take her at her word. See Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Importantly, the district court confirmed, as we have above, that the ALJ did not err in discounting Dr. Charlat's opinions concerning Best-Willie's alleged extreme mental limitations. See Fischer-Ross, 431 F.3d at 733-34 (noting harmless error applies when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review).

Further, in evaluating Best-Willie's RFC, the ALJ considered Dr. Swaner's February 2008 psychological consultative examination. Best-Willie admitted that depression is not a primary debilitator, and Dr. Swaner found that Best-Willie exhibited normal social functioning skills and attention skills. Moreover, the ALJ addressed Dr. Charlat's medical report that Best-Willie's mental impairments, including her generalized anxiety, were controlled by medication. In reviewing the ALJ's analysis at other steps of the sequential analysis, we conclude the ALJ

properly determined that Best-Willie's generalized anxiety did not meet or equal a listed impairment.  Id. at 733.

Best-Willie nevertheless contends that the ALJ should have considered whether the combination of her impairments equaled any of the listed impairments, and obtained an updated opinion from a medical expert in determining whether her mental impairments were equivalent in severity to a listed impairment.  She argues this was necessary because there was new medical evidence submitted, specifically the assessments by Drs. Hall and Charlat, after the state agency physicians' consultations had taken place.[6]  We discern no error.  In March 2008, a state agency psychologist reviewed the medical evidence, completed a Psychiatric Review Technique Form, and concluded that Best-Willie's mental impairments were not severe and did not equal a listing.  The ALJ did not err in relying on this evaluation. See SSR 96-6p, 1996 WL 374180, at *1-3; see also 20 C.F.R. § 404.1526(c). Contrary to Best-Willie's claim, an ALJ is only required to obtain an updated medical opinion from a medical expert "when additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency . . . psychological

---

[6] Best-Willie does not expressly state what "assessments" by Drs. Hall and Charlat were not in the record at the time of the state agency physicians' review.  We assume, however, that she is referring to Dr. Hall's February 2009 assessment, and treatment records from Dr. Charlat between February 2008 and November 2008. Regarding Dr. Charlat, the record contains a total of five treatment notes: February 22, 2008; April 4, 2008; June 6, 2008; August 8, 2008; and November 14, 2008.

consultant's finding that the impairment is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4.

### C

Best-Willie next challenges the ALJ's credibility determination with respect to her subjective complaints of pain. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Hackett, 395 F.3d at 1173 (quotation omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quotation and alteration omitted).

"To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) (quotation omitted). "[A claimant's] statements regarding the intensity and persistence of the pain must be consistent with the medical findings and signs." Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988). In evaluating the credibility of a claimant's statements regarding pain, an ALJ should consider an individual's daily activities; the location, duration, frequency, and intensity of the pain; the dosage and effectiveness of medications taken to alleviate pain; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Hamlin v. Barnhart, 365 F.3d 1208, 1220

(10th Cir. 2004); see also Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (listing other factors such as frequency of medical contacts).

The ALJ found the level of pain severity claimed by Best-Willie unpersuasive. She determined that Best-Willie's allegations of pain "far exceed any acceptable, objective medical evidence of a physical source for the degree of impairments alleged." Recognizing that Best-Willie has a history of abdominal pain and orthopedic issues but that all diagnostic testing had been within normal limits, the ALJ noted that Best-Willie's physical and mental impairments were treated with conservative care, required no surgery or extended hospitalization, and required little physical therapy. The ALJ considered that the pain associated with Best-Willie's mental impairments was controlled with medication. See Hamlin, 365 F.3d at 1220 (noting that in evaluating credibility, ALJ may consider effectiveness of medications taken to alleviate pain). The ALJ also noted that Best-Willie received no recent treatment for her physical and mental impairments.[7]

Further, the ALJ properly considered that Best-Willie's daily activities were inconsistent with her allegations of severe pain. Best-Willie reported that she could care for her personal needs, do some household chores, handle her finances, watch television, and spend time writing her family's genealogical history. Although an

---

[7] In evaluating the documentary medical evidence, the ALJ had previously noted that Best-Willie's last treatment record for physical impairments was in October 2007 and that the last treatment record for mental health care was November 2008.

ALJ may not rely on the performance of minimal daily activities alone as substantial evidence that a claimant does not suffer disabling pain, see Thompson, 987 F.2d at 1490, the ALJ appropriately considered several factors in making her adverse credibility determination and tied that finding to specific evidence in the record.

Finally, we reject Best-Willie's claim that the ALJ did not address her obesity. The ALJ considered Best-Willie's obesity impairment but concluded that complaints of disability due to obesity were not credible because Best-Willie repeatedly ignored medical advice to lose weight.

After examining the record as a whole, we conclude that the ALJ's negative credibility finding is linked to substantial evidence and thus find no error. See Hackett, 395 F.3d at 1173.

**D**

Best-Willie next challenges the ALJ's failure to consider a lay witness statement, a letter from her husband. Mr. Willie's letter discussed his wife's inability to sit for more than two hours at a time before needing bedrest, lack of concentration, and inability to travel certain distances due to pain. Mr. Willie's letter is cumulative of Best-Willie's testimony concerning her limitations and reports of pain, which the ALJ discussed and found not credible. We conclude that although the ALJ's decision does not expressly address this lay witness evidence, any error in failing to do so is harmless because "the same evidence that the ALJ referred to in discrediting [the

16

claimant's] claims also discredits [the lay witness's] claims." Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011).

## E

Best-Willie also alleges errors regarding step four of the sequential analysis. Step four is comprised of three phases.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation and quotation omitted). Those findings must be supported by substantial evidence. See Watkins, 350 F.3d at 1299.

Best-Willie first claims error regarding the ALJ's RFC assessment. "In determining a claimant's physical abilities, the ALJ should . . . assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (quotation and alteration omitted). This involves consideration of the claimant's "impairment(s), and any related symptoms . . . [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

The ALJ concluded that Best-Willie had a RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[8] with an option to sit/stand at will; postural limitations restricting her to only occasionally climbing ramps or stairs, balancing, kneeling, stooping, and crouching, and never crawling or climbing ladders, ropes, or scaffolding; fingering with the left hand no more than frequently; avoiding moderate exposure to hazards such as machinery and heights; and moderate limitations in her ability to maintain extended attention and concentration and respond appropriately to work pressures.

In conclusory fashion, Best-Willie claims that the ALJ did not include "many of the limitations" identified by her treating physicians, Drs. Hall and Charlat, in her RFC assessment. But Best-Willie does not state what limitations should have been included. As discussed above, the ALJ properly considered the opinions of Drs. Hall and Charlat and accorded them little weight because they were unsupported by the

_____

[8] Light work is defined in the regulations as follows:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

medical evidence. Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment. And based on our review of the record, we conclude there is substantial evidence to support the ALJ's RFC assessment for light work.

Best-Willie next argues that the ALJ erred by failing to make required findings regarding the physical and mental demands of her past relevant work. We disagree. At phase two of the step four analysis, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. To make such findings, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82–62, 1982 WL 31386, at *3 (1982). Such information regarding work demands may be obtained from the claimant herself, her employer, or another informed source. See id. The ALJ here did this.

As a preliminary matter, we reject Best-Willie's assertion that the ALJ erred by concluding that her past employment as a photocopy machine operator constituted past relevant work without evidentiary support or citing support. Best-Willie testified to her work "doing production printing jobs" at a print copy center and also submitted paperwork confirming this work. The record supports the ALJ's conclusion, and the ALJ's failure to expressly cite evidence in support does not constitute error. The ALJ stated that she carefully considered all evidence in the record and we take her at her word. See Hackett, 395 F.3d at 1173.

The ALJ also requested information from the vocational expert regarding Best-Willie's past relevant work. The expert testified that Best-Willie's past work as a technical consultant was classified as a customer complaint clerk which was a sedentary job, and skilled at a specific vocational preparation ("SVP") level of five, or as an end user consultant which was a sedentary job, and skilled at SVP seven. The expert further testified that Best-Willie's job as a photocopy machine operator was medium in demand as she performed it. But relying on the Dictionary of Occupational Titles, the expert testified that the job of photocopy machine operator as generally performed is classified as light in demand and unskilled. Unskilled work is "work which needs little or no judgment to do simple duties . . . [which] may or may not require considerable strength . . . and [requires] little specific vocational preparation and judgment." 20 C.F.R. § 404.1568(a). Accordingly, the ALJ obtained information concerning the physical and mental demands of Best-Willie's past relevant work and appropriately relied on the vocational expert's testimony in her decision. See Doyal, 331 F.3d at 761 (finding no Winfrey error where ALJ relied on vocational expert's testimony in support of ALJ's phase two and phase three findings).

Finally, Best-Willie asserts that the ALJ erroneously relied on the expert's testimony to determine, without sufficient analysis, that the demands of her previous jobs were compatible with her RFC. At the hearing, the ALJ posed a hypothetical to the expert, including Best-Willie's postural limitations and mental limitations, and

20

asked whether such an individual could perform Best-Willie's past relevant work. The expert responded in the affirmative. In concluding that Best-Willie could perform that past relevant work, the ALJ notes the expert's testimony. We perceive nothing improper with the ALJ's analysis.

Moreover, any legal error at step four is harmless in view of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy that Best-Willie could perform given her RFC for light work. See Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four). Despite Best-Willie's argument to the contrary, we conclude that the ALJ's step-five evaluation was proper. Best-Willie's only claim of error is that the ALJ's hypothetical regarding other jobs available in the national economy was incomplete because it did not include the limitations assessed by Drs. Hall and Charlat. But the ALJ's hypothetical needed only to include those limitations "borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). And as we have already confirmed, the ALJ did not err in discounting the opinions of Drs. Hall and Charlat.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge