**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

ELIZABETH HACKETT,

     Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

     Defendant-Appellee.

No. 04-1047

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 03-B-168 (PAC))**

---

Submitted on the briefs:[*]

Ann J. Atkinson, Aurora, Colorado, for Appellant.

John W. Suthers, United States Attorney; Kurt J. Bohn, Assistant U.S. Attorney;
Michele M. Kelley, Assistant Regional Counsel, Social Security Administration,
Office of the General Counsel, Denver, Colorado, for Appellee.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **HARTZ** , and **BALDOCK** , Circuit Judges, and    **BRIMMER** ,[**] District Judge.

_____

**HARTZ**, Circuit Judge.

_____

Plaintiff Elizabeth Hackett appeals from an order of the district court affirming the Commissioner's decision to deny her application for Social Security disability benefits.  Plaintiff is a college graduate who has past relevant experience as a checker/cashier, a director of occupational therapy, a program coordinator for an acute-care hospital, an occupational therapist, a wedding coordinator, and a life-care instructor in a group home.  At the time her alleged disability began, she was 31 years old.  She claims her disability is due to "bilateral (RSD) reflex sympathetic dystrophy, right tenosyn[o]vitis, limited range of motion, upper back pain, depression and migraines."   Aplt. App., Vol. II at 103.

Plaintiff contends that the decision of the Commissioner should be set aside on three grounds: (1) on her appeal from the decision of the administrative law judge (ALJ), the Social Security Appeals Council did not properly consider the permanent-and-total-disability decision of the Colorado Executive Department in her workers' compensation case; (2) the ALJ's findings regarding her residual

_____

[**]    The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

functional capacity (RFC) are unsupported by substantial evidence because there is inadequate support for the ALJ's finding that she was not credible and the ALJ did not properly consider the opinions of her treating physicians; and (3) the ALJ misstated the testimony of the vocational expert (VE) and failed to reconcile the VE's actual testimony with the Dictionary of Occupational Titles. We have jurisdiction over this appeal under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm on all grounds except the failure to reconcile. We reverse in part and remand to the district court with directions to remand to the agency for further proceedings.

I *Background*

The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 & n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience. *See id.* at 751.

The ALJ determined that Plaintiff was not disabled. He found that she could perform a wide range of sedentary work compromised only by certain

physical and mental limitations to be discussed below. After deciding at step one that Plaintiff had not engaged in significant gainful activity since her alleged disability onset date, the ALJ found at step two that, individually or in combination, Plaintiff's alleged impairments were severe. At step three, however, the ALJ found that Plaintiff's impairments were not severe enough to meet or to equal any of the listed impairments in the Social Security Regulations that would require a finding that she was disabled.

At step four the ALJ found that Plaintiff retained the RFC to perform sedentary work that involves "maximum lifting of ten pounds and no prolonged walking or standing activities." Aplt. App., Vol. II at 32. According to the ALJ, Plaintiff could sit continuously for 90 minutes (six hours out of an eight-hour day) and stand and walk continuously for 30 minutes (four hours out of an eight-hour day). The ALJ also found that Plaintiff's RFC is diminished by non-exertional restrictions in that she can engage in "only occasional crawling, reaching above shoulder level, pushing and pulling, fingering and grasping." Although Plaintiff can frequently stoop, crouch, squat, and climb stairs, she cannot climb ladders, balance and work around dangerous machinery, or do a job where driving is a major job requirement. The ALJ further found that Plaintiff "should avoid exposure to temperature extremes, vibration, and concentration of dust, fumes and chemicals." *Id.*

-4-

With regard to her mental limitations, the ALJ found that Plaintiff "retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." *Id.* She can perform work under general supervision, "but needs to work in a low stress environment and avoid direct contact with the general public and have only occasional interaction with co-workers." *Id.* Plaintiff is moderately restricted in "following work rules and responding to supervision." *Id.*

At step four the ALJ also determined that Plaintiff could not return to her past relevant work as a checker/cashier, wedding coordinator, adult health aide, occupational therapist, or director of occupational therapy. But at step five the ALJ, using the Medical-Vocational Guidelines as a framework, *see* 20 C.F.R. § 404.1569 and Pt. 404, Subpart P, App. 2, Table No. 1, Rule 201.28, and also relying on the testimony of a VE, concluded that Plaintiff was not disabled because she could perform work as a call-out operator and a surveillance-system monitor, both jobs existing in significant numbers.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

II *Standard of Review*

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted). We consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988), but we will not reweigh the evidence or substitute our judgment for the Commissioner's, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

III *Discussion*

1. <u>Workers' Compensation Finding</u>

Plaintiff first argues that the Appeals Council erred in failing to give proper consideration to a decision rendered by the Colorado Executive Department finding Plaintiff permanently and totally disabled for workers' compensation purposes. Because the state agency decision did not become available until after the hearing before the ALJ, Plaintiff submitted the evidence to the Appeals Council, which made it a part of the record. *See O'Dell v. Shalala*, 44 F.3d 855,

859 (10th Cir. 1994) (new evidence submitted to the Appeals Council becomes part of the administrative record for purposes of judicial review).

We have held that "[a]lthough findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (internal quotation marks omitted). Assuming, without deciding, that the holding in *Baca* applies to findings by state agencies, we agree with the district court that the Appeals Council fulfilled its obligation to consider the workers' compensation decision.

Plaintiff has not pointed to any specific factual finding or evidence in the state disability determination that should have changed the Appeals Council's decision. To the extent that the state agency differed from the ALJ in assessing credibility, there is of course no reason why the Appeals Council must always adopt the state agency's view over that of the ALJ. Plaintiff complains that the Appeals Council's reference to the state proceeding was perfunctory – the Appeals Council wrote only that it had considered the additional evidence submitted "but concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision." Aplt. App., Vol. II at 7. Yet, our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has

considered a matter. *See United States v. Kelly*, 359 F.3d. 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison time for probation violation, but court need only say that it has done so); *cf. Andrews v. Deland*, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a *de novo* review of the record"). We reject this claim of error.

2. RFC Findings

Plaintiff next argues that the ALJ's findings regarding her RFC are not based on substantial evidence because he did not cite any factors contradicting her credibility and failed to give controlling weight to the opinions of her treating physicians.

a. Credibility

The ALJ found that "claimant's testimony is not fully credible to the extent she alleges total disability and a total inability to sustain work activity." Aplt. App., Vol. II at 35. As support for this conclusion, the ALJ pointed to Plaintiff's daily activities and contradictions in her various reports regarding them. He also cited medical evidence showing that her left upper extremity had stabilized and that she had responded to conservative treatment for pain. And he noted that Plaintiff's mental impairments, while present to some degree, are "fairly well controlled with medication," as indicated by the medical evidence. *Id.* at 32.

Our analysis of an ALJ's credibility findings is guided by the opinion in

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), where we stated:

> "Credibility determinations are peculiarly the province of the finder
> of fact, and we will not upset such determinations when supported by
> substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898
> F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to
> credibility should be closely and affirmatively linked to substantial
> evidence and not just a conclusion in the guise of findings." *Huston
> [v. Bowen]*, 838 F.2d [1125,] 1133 [(10th Cir. 1988)] (footnote
> omitted); *see also Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.
> 1992) (ALJ "must articulate specific reasons for questioning the
> claimant's credibility" where subjective pain testimony is critical);
> *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.
> 1988) ("failure to make credibility findings regarding . . . critical
> testimony fatally undermines the [Commissioner's] argument that
> there is substantial evidence adequate to support [her] conclusion
> that claimant is not under a disability").

After examining the record as a whole, we are persuaded that the ALJ's

credibility findings are closely and affirmatively linked to substantial evidence.

Plaintiff's argument to the contrary constitutes an invitation to this court to

engage in an impermissible reweighing of the evidence and to substitute our

judgment for that of the Commissioner, an invitation we must decline. *See*

*Qualls*, 206 F.3d at 1371.

b.  <u>Treating physicians</u>

Plaintiff argues that the ALJ erred in refusing to accord controlling weight

to the opinions of two of her treating physicians: Dr. Kimata, a psychiatrist, and

Dr. Meyers, a treating psychologist. We disagree.

Under the "treating physician rule," the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2). The initial step in evaluating the opinion of a treating source is to determine whether the opinion merits "controlling weight." *Langley*, 373 F.3d at 1119 (internal quotation marks omitted).

> The analysis is sequential. The ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." S.S.R. 96-2p, 1996 WL 374188, at *2 (quotation omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ refused to give controlling weight to some of the opinions expressed by Dr. Kimata, rejecting certain limitations noted by Dr. Kimata in his mental medical-source statement. That statement indicated that Plaintiff had marked restrictions in her ability to interact appropriately with supervisors and co-workers and was also markedly restricted in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.

The ALJ rejected these limitations because

> the reasons for such restrictions are subjective isolated reported
> instances to Dr. Kimata by the claimant. In addition, these
> restrictions are not supported by his own records which indicate
> improvement and stabilization on medications. Also, Dr. Anderson
> [-Oeser, another treating physician,] does not report such restrictions
> in her treatment notes. Thus, more weight will be provided
> Dr. Kimata's written narrative reports than a checklist in which
> certain 'check marks' conflict with his narrative reports as well as
> Dr. Anderson's.

Aplt. App., Vol. II at 32. Substantial evidence in the record supports the ALJ's

decision to accord less than controlling weight to the referenced portion of

Dr. Kimata's opinion.

With regard to the opinion of Dr. Meyers, a treating psychologist, the ALJ

rejected only Dr. Meyers's opinion indicating marked impairment in Plaintiff's

"ability to interact with supervisors and co-workers and to respond appropriately

to ordinary work pressures and routine changes in a typical work setting." *Id.* at

30. The ALJ explained that Dr. Meyers's opinion appeared to be based on

subjective complaints and isolated instances "rather than objective findings." *Id.*

Also, the ALJ found that Dr. Meyers's opinions contradicted the opinions of both

Dr. Kimata and Dr. Anderson-Oeser: "[The latter two doctors] reported

improvement in the claimant's depressive and anxiety symptoms and did not find

that her mental impairments would totally preclude work activity. In December

2000, Dr. Anderson-Oeser reported that the claimant's affect was normal and that

-11-

she felt relatively stable on her medication." *Id.* On the record before us, the ALJ was free to reject Dr. Meyers's opinion. *See Watkins*, 350 F.3d at 1300-01.

3. Conflict between the VE testimony and the DOT

Plaintiff's final contention is that the ALJ misstated the testimony of the VE and failed to reconcile the VE's actual testimony with the Dictionary of Occupational Titles (DOT), contrary to this court's decision in *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), and Social Security Ruling 00-4p, 2000 WL 1898704.

*Haddock* held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Id.* at 1087. Although this holding may seem to be limited to only discrepancies with respect to exertional limitations, *Haddock* itself addressed both exertional and skill-level limitations that conflicted with the DOT. Thus, whether the ALJ fulfilled his duties regarding any conflict between the DOT job descriptions and Plaintiff's nonexertional limitations is also controlled by *Haddock.* Likewise, Social Security Ruling 00-4p, which essentially codifies *Haddock*, requires a reasonable

-12-

explanation for conflicts between a VE's testimony and the DOT relating to any "occupational information." 2000 WL 1898704 at *2.

In his decision the ALJ said that the VE had admitted at the hearing that his opinions about the jobs Plaintiff could do did not directly correspond with information in the DOT. The ALJ then asserted that the VE explained this discrepancy by relying on his own "education, experience and observations of the jobs as actually performed in the economy." Aplt. App., Vol. II at 34. As Plaintiff and the district court have pointed out, however, there is no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for the conflict. The district court nevertheless ruled that the ALJ's assertion about the VE's explanation was unnecessary because there was no conflict between the VE's testimony and the DOT. We agree with respect to the "people" function of the designated jobs, but disagree with respect to the required reasoning level.

a. "People" function

Plaintiff contends that the jobs identified by the VE are not available to her because her RFC limits her to jobs that accommodate her need to "avoid direct contact with the general public and have only occasional interaction with coworkers," Aplt. App. Vol. II at 35, whereas these jobs are defined in the DOT as requiring significant work with people. We disagree.

-13-

Each job listed in the DOT is described by reference to various components. One component is "Worker Functions." The worker function labeled "People" expresses the degree of interaction with other people that the job requires. Both jobs identified for Plaintiff – call-out operator and surveillance-system monitor – have a people rating of 6, which means that they require "[t]alking with and/or signaling people to convey or exchange information [and] giving assignments and/or directions to helpers or assistants." DOT, Vol. II at 1006. The job descriptions for these two positions, however, indicate that contact with people is rather limited. The DOT description for call-out operator states:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

DOT, Vol. I, 237.367-014 at 207. The description for surveillance-system monitor states:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to

-14-

improve reception, and notifies repair service of equipment malfunctions.

*Id*. 379.367-010 at 281.

The ALJ expressly informed the VE that Plaintiff would be restricted to "no direct public contact." Yet the VE stated the two above jobs would be suitable, saying: "[The] jobs . . . are fairly solitary jobs. The call-out operator being indirect contact via telephone." Aplt. App., Vol. II at 59. We see no conflict between the DOT and this testimony. Nor do we see any conflict between the DOT descriptions of the designated jobs and Plaintiff's restriction to only occasional interaction with co-workers.

b. Reasoning level

The DOT states that both surveillance-system monitor and call-out operator require a reasoning level of three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations." DOT, Vol. II at 1011;    *see id.* , Vol. I at 281 (categorizing surveillance-system monitor as requiring level-three reasoning);    *id.* at 207 (same with regard to call-out operator).

Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs requiring a reasoning level of three. The ALJ's findings with regard to Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention, concentration,

persistence and pace levels required for simple and routine work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with the demands of level-three reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher). We note that level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC.

We therefore must reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE. To reverse and remand on this ground almost four years after the hearing before the ALJ is unfortunate. Plaintiff was represented by counsel at the hearing; and had this conflict been raised at that time, the ALJ could have responded by explaining or changing his ruling. Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two

years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates. *See Sims v. Apfel*, 530 U.S. 103 (2000).

IV *Conclusion*

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED with directions to REMAND to the agency for additional proceedings consistent with this disposition.