FILED
United States Court of Appeals
Tenth Circuit

March 1, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICKY M. JOHNSON,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-5058
(D.C. No. 4:17-CV-00152-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Ricky M. Johnson appeals from the district court's order denying his

application for Social Security disability benefits and supplemental security income

benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g),

we affirm.

## I.    BACKGROUND

Johnson, who had previously worked as a pipeline equipment oiler, a

newspaper carrier, and a homebuilder and building contractor, filed for benefits in

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

July 2014. According to Johnson, he became disabled in January 2014, due to shortness of breath, various pulmonary and cardiac concerns, and arthritic-type knee pain.

Following the administrative denial of his claims, Johnson requested a hearing before an administrative law judge (ALJ). The ALJ concluded that he was not disabled and the Appeals Council denied review. On appeal to the district court, the parties consented to the jurisdiction of a magistrate judge, who affirmed the Commissioner's decision.

## A. **Medical Evidence**

From January to March 2014, Johnson made several trips to urgent care with complaints of joint pain, a cough and shortness of breath due to acute bronchitis and asthma. The diagnoses included congestive heart failure, shortness of breath, arthritis, and edema. Johnson took ibuprofen for pain and used a nebulizer for his acute bronchitis.

In April 2014, Johnson was diagnosed with sleep apnea. His response to treatment—a CPAP machine—"was nothing less than spectacular," Aplt. App., Vol. 4 at 332, and resulted in improved quality of sleep and daytime energy.

In May 2014, Johnson was evaluated at the Oklahoma Heart Institute. He had some edema in his legs, but his breathing was normal and his lungs were clear. He demonstrated normal muscle strength and all cardiac tests were normal or negative. He was advised to continue taking his medications, including diuretics for edema, and using his sleep apnea machine.

2

May 2014 is also when Johnson went to James Rutter, M.D., "to establish care." *Id*. at 366. Dr. Rutter noted that Johnson had "mild" chronic obstructive pulmonary disease (COPD), and "seem[ed] to be doing ok[ay] on" his medication. *Id.* Dr. Rutter's examinations in May and June 2014, showed normal breathing rhythm and depth, normal heart and lung sounds, and no edema. Chest x-rays showed clear lungs and a normal heart size. A pulmonary function test performed on June 26, 2014, showed "moderate" obstruction, *id*. at 389, with Johnson maintaining oxygen levels of 94% to 97% on room air while walking for six minutes at a "continuous, moderate pace," *id*. at 390.

When Johnson saw Dr. Rutter in July 2014, Johnson said that ibuprofen helped his joint pain, and reported exercising once or twice a week. Dr. Rutter encouraged him do "mild to moderate walking to help with [his] pulmonary status." *Id*. at 362. Just a week later, however, Dr. Rutter filled out a form in connection with Johnson's disability proceedings titled "MEDICAL SOURCE OPINION OF RESIDUAL FUNCTIONAL CAPACITY." *Id*. at 387. Dr. Rutter checked off and/or circled several items concerning Johnson's purported work limitations in an eight-hour work day. Specifically, Dr. Rutter said Johnson could not stand and/or walk for more than two to three hours, and could lift only 15 pounds frequently. Dr. Rutter explicitly excluded pain as the reason for the standing, walking, and lifting restrictions. He also said that Johnson needed to avoid dust, chemicals, and high humidity. Although he noted that Johnson's obesity exacerbated his physical conditions, he did not add

3

any detail. Significantly, even though Dr. Rutter was asked to describe the medical findings to support his assessment, he left that section of the form blank.

On July 29, 2014, Dr. Rutter signed a "Handicapped Parking Placard Application" for Johnson. *Id*. at 399. As grounds, Dr. Rutter checked a box stating that Johnson "[c]annot walk 200 feet without stopping to rest." *Id*.

At a check-up in August 2014, Johnson reported knee pain, but Dr. Rutter did not prescribe any pain medications. Johnson's exhaling was prolonged with decreased force, but his breathing rhythm and depth were normal, and his heart and lung sounds were also normal. Dr. Rutter continued Johnson's medications.

X-rays taken of Johnson's knees on October 1, 2014, were primarily normal and a pulmonary function test on October 2, 2014, showed "minimal" obstruction, *id*. at 415.

Nevertheless, Johnson told David Wiegman M.D., who performed a consultative physical examination on October 11, 2014, that he could walk only about 100 yards due to "shortness of breath and knee pain," and his knee pain limited him to standing for no "more than about 20 minutes." *Id*. at 422. Further, Johnson estimated that he could "lift [no] more than about 50 pounds." *Id*.

Dr. Wiegman found that Johnson had full strength in his arms, legs, and grip, and a normal range of motion of his arms and legs. "Back and neck exams were normal with normal range of motion and no significant pain." *Id*. at 423. "There is no edema." *Id*. Dr. Wiegman also observed that Johnson "had a normal symmetric

4

steady gait. He did not have any problems walking in and out [of] the office today, [although] [h]e did have difficulty walking on his toes and heels separately." *Id*.

The state agency medical consultant, James Metcalf, M.D., reviewed the medical evidence and issued a report on October 22, 2014. He opined that Johnson had the physical ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Essentially, Dr. Metcalf opined that Johnson could perform "medium work," which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).[1] Dr. Metcalf further opined that Johnson should avoid concentrated exposure to various environmental conditions such as fumes, odors, dusts, gases, poor ventilation, and humidity.

At an office visit in December 2014, Dr. Rutter told Johnson to continue his medications and come back in six months. Later that month, state agency medical consultant William Oehlert, M.D., reviewed the updated medical evidence and reaffirmed that Johnson could perform "medium work," but should avoid prolonged exposure to various pulmonary irritants and humidity. Dr. Oehlert expressly considered and rejected Dr. Rutter's July 21, 2014, opinion that contained the severe

---

[1] Citations to 20 C.F.R. part 404, which cover disability income benefits, have parallel citations at 20 C.F.R. part 416, which cover supplemental security income benefits. This order and judgment does not cite the parallel supplemental security income regulations.

5

restrictions because "[t]he opinion is without substantial support from other evidence of record, which renders it less persuasive." Aplt. App., Vol. 2 at 119.

The relevant medical evidence ends with Dr. Rutter's notes from Johnson's June 9, 2015, office visit during which he told Johnson to continue his medications and come back in six months.

## B. Johnson's Testimony

According to Johnson, he stopped working as a pipeline equipment oiler, where he had to stand, walk, climb, and/or crouch for at least nine hours a day, because his knees bothered him, and he "couldn't breathe," *id*., Vol. 2 at 42. He said that he could only stand or walk for only about 15 minutes before his right leg started to ache. High humidity was a problem for him as well, along with dust and grass clippings. He spent most days sitting down, doing some walking around the yard, and said "I piddle around in my workshop a little bit if I feel like doing that." *Id*. at 49.

## C. The ALJ's Decision

The ALJ found that Johnson had the severe impairments of COPD, hypertension, obesity, and a history of knee pain, and could perform "less than the full range of medium work," *id*. at 26. Specifically, the ALJ found that Johnson had the residual functional capacity (RFC) to "occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday. [He] should avoid concentrated exposure to such things as fumes, odors, dust and gases." *Id*. In his

6

hypothetical question to the vocational expert (VE), the ALJ acknowledged that Johnson also could not perform work involving "concentrated exposure to humidity." *Id*. at 54.

The ALJ discounted Johnson's subjective complaints of disability because his testimony was inconsistent with the evidence. Also, the ALJ gave "little weight" to Dr. Rutter's July 24, 2014, opinion, primarily because it was unsupported and inconsistent with the evidence. *Id*. at 29. At step five, and based on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy, namely janitor and machine packager, that Johnson could perform, and he therefore was not disabled.

## II.     STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.

*Id*. (citations and internal quotation marks omitted).

Moreover, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported

7

by substantial evidence." *Id*. (internal quotation marks omitted). "We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id*. (brackets and internal quotation marks omitted).

### III.   ANALYSIS

#### A. <u>Obesity</u>

As his first assignment of error, Johnson argues that the ALJ failed to properly consider his obesity in formulating his RFC, particularly its effects in combination with his COPD. We disagree.

Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002), provides guidance on how an ALJ should evaluate a claimant's obesity. It does not mandate any additional restrictions or a finding of disability; rather, it provides that in assessing RFC, an ALJ should consider "any functional limitations resulting from the [claimant's] obesity," in addition to any limitations resulting from any other impairments. *Id*. at *7. The ALJ did just that.

> In the present case, [Johnson's] obesity is not such as to prevent ambulation, reaching, or postural maneuvers. It does, though, in combination with [his] other impairments, somewhat reduce [his] ability to stand, walk, lift and carry. A reduction in capacity to work at the medium exertional range with some further appropriate work restrictions is therefore warranted. These limitations are accounted for in the residual functional capacity as determined herein.

Aplt. App., Vol. 2 at 26. Those "further appropriate work restrictions" preclude work environments where Johnson would have "concentrated exposure to such things as

fumes, odors, dust and gases," *id.*, and "humidity," as explained by the ALJ in his hypothetical question to the VE, *id.* at 54.

Second, Drs. Metcalf and Oehlert, to whose opinions the ALJ in some instances afforded "great weight," *id.* at 29, noted Johnson's height, weight, and body mass index in reaching their conclusions that he could perform "medium work."

In *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004), we held that there was no error where, among other things, the ALJ discussed the "possible ramifications" of the claimant's obesity. Further, there was no error where, among other things, the ALJ's RFC determination was supported by an examining physician's report that considered the claimant's obesity. *See id.* Those circumstances pertain here, and as such, there was no error.

## B. Treating Physician

In determining Johnson's RFC, the ALJ afforded "little weight" to the July 21, 2014, form filled out by Dr. Rutter that contained the severe limitations previously discussed. Johnson argues that the ALJ failed to give this opinion from his treating physician the "deference to which it is entitled." Aplt. Opening Br. at 18. This is another way of saying that the ALJ should have afforded Dr. Rutter's opinion controlling weight.[2] Again, we disagree.

Generally, an ALJ gives more weight to the opinion of the claimant's treating physician. 20 C.F.R. § 404.1527(c)(2) ("If . . . a treating source's opinion on the

---

[2] Based on the unanimous opinions of Drs. Rutter, Metcalf, and Oehlert that Johnson should avoid concentrated exposure to various pulmonary irritants and humidity, the ALJ placed this limitation on his work environment.

issue(s) of the nature and severity of your impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). When, however, an ALJ gives something less than controlling weight to a treating physician's opinion, he is required to apply certain factors "in determining the weight to give the opinion." *Id*. These factors include (1) the length of the treatment relationship and (2) the nature and extent of the treatment relationship. *See id*. § 404.1527(c)(2)(i),(ii). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." *Id*. § 404.1527(c)(3).

The ALJ gave Dr. Rutter's opinion "little weight" primarily because he did not "provide any objective findings or identify any specific medical evidence upon which he based his opinion." Aplt. App., Vol. 2 at 29. This finding is supported by substantial evidence.

First, Dr. Rutter and Johnson did not have a lengthy relationship. Second, on the form that Dr. Rutter completed that contained the checkmarks and circles noting Johnson's limitations, he failed to answer the question about what medical findings supported his assessment. Third, Dr. Rutter did nothing more than check a box on an application for a handicapped placard. This is not the type of evidence on which to

10

base a disability finding, particularly in light of the fact that it is inconsistent with the *medical* evidence.

Also, Dr. Rutter's opinion is not corroborated by his own treatment notes or the other medical evidence. In this regard, we note that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." § 404.1527(c)(4).

As a preliminary matter, the limitations Dr. Rutter noted on Johnson's ability to stand, walk, lift, and carry were necessarily based on breathing problems, because he specifically stated they were not due to pain. But as the ALJ explained, the "extreme exertional limitations [noted by Dr. Rutter] are not supported by [Johnson's] moderate pulmonary defects." Aplt. App., Vol. 2 at 29.

For example, Dr. Rutter's notes characterized Johnson's COPD as "mild." *Id.*, Vol. 4 at 366. Further, the tests ordered by Dr. Rutter showed Johnson's lungs were clear, his pulmonary function was only "moderate[ly]" obstructed, *id.*, at 389, and he was able to maintain oxygen saturation levels of 94% to 97% on room air while walking at a "continuous, moderate pace" for six minutes," *id.* at 390.

Likewise, the ALJ reasonably discounted Dr. Rutter's opinion to the extent that it limited Johnson to frequently lifting and/or carrying 15 pounds. Johnson himself told Dr. Wiegman that he could lift up to 50 pounds and there is no objective evidence to support the 15-pound limitation. We have concluded that it is reasonable for an ALJ to discount a treating physician's opinion about how much a claimant can lift where the opinion is not supported by any objective clinical findings and the

11

claimant reported that he could lift more. *See Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003).

According to the Commissioner, Johnson's remaining arguments "suggest[] the ALJ should have discussed various other potentially relevant factors in evaluating Dr. Rutter's opinion." Aplee. Resp. Br. at 27. As to this issue, the ALJ did not need to expressly discuss every relevant factor. Like the claimant in *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), Johnson "cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."

Last, we agree with the Commissioner that we must reject Johnson's alternative interpretations of the evidence, because this would require us to reweigh the evidence and substitute our judgment for the Commissioner's, which is something we cannot do. *See Lax*, 489 F.3d at 1084.

C. **Subjective Complaints**

According to Johnson, the ALJ unreasonably discounted his testimony about how his COPD impacted his ability to walk and stand and about the severity of his pain. We conclude that the ALJ applied the correct law and his decision is supported by substantial evidence.

At the hearing, Johnson testified that his knees "just have a lot of pain in them. And I've got a dead nerve in my right leg that burns and stings and feels like I'm getting poked with needles all the time. I just can't stand on it very long." Aplt. App., Vol. 2 at 43. More specifically, he said that he could stand or walk without

12

significant pain only for "[a]bout 15 minutes." *Id.* The only way to ease the pain was to "sit down and get off of it for a little while," which was "[a]bout 30 minutes at a time." *Id.* The pain also caused problems with balance, and Johnson described falling in his yard about a month before his hearing. As to his COPD, Johnson said "I just can't breathe real good. It takes a lot out of me to try to breathe," especially in high humidity and cold weather. *Id*. at 45.

Evaluation of subjective symptoms is "peculiarly the province of the [ALJ], and [we] will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks omitted). Still, there are several factors the ALJ should consider in making such determinations. Under 20 C.F.R. § 404.1529(c)(4), an ALJ considers the claimant's "statements about the intensity, persistence, and limiting effects of [his] symptoms, and . . . will evaluate [his] statements in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether [he is] disabled."

With respect to Johnson's breathing problems, the objective medical evidence established that he had "mild" to "moderate" symptoms, and several clinical examination findings were normal with respect to his heart sounds, lung sounds, breathing rhythm, and deep breathing.

Other factors that the ALJ can consider in evaluating a claimant's subjective complaints include treatment, medication, and the frequency, duration, and intensity of symptoms. *See id*. § 404.1529(c)(3)(ii),(iv)-(v). The record demonstrates, and the ALJ noted, that Johnson had only one acute pulmonary event, which improved after

13

out-patient treatment with a nebulizer, and his cardio-pulmonary status improved with medications and an apnea machine.

The record similarly supports the ALJ's finding that Johnson's knee pain and leg pain were less limiting than he claimed. Treatment records established that Johnson took ibuprofen intermittently for joint pain. Several clinical examination findings were normal with respect to Johnson's gait and strength, and he was able to walk at a "continuous moderate pace" during a six-minute walking test with no reported difficulties. Aplt. App., Vol. 4 at 390.

Last, Johnson either ignores the ALJ's record-based reasons for discounting Johnson's subjective complaints, or urges this court to reweigh the evidence and substitute our judgment for the Commissioner's, which we cannot do. *See Lax*, 489 F.3d at 1084.

### D. <u>Jobs</u>

At the final step in his disability evaluation, the ALJ determined that Johnson was not disabled because although he could not perform his past relevant work, there were two jobs existing in significant numbers in the national economy that he could perform: janitor and machine packager. Johnson argues that this conclusion is wrong for several reasons, and the case must remanded for further findings. We disagree.

First, we reject Johnson's hyper-technical reading of the transcript and concomitant contention that the ALJ's hypothetical to the VE did not contain all of the limitations assessed by the ALJ—it did.

14

Second, the jobs of janitor and machine packager do not involve *concentrated* exposure to pulmonary irritants or humidity. As to both jobs, the Dictionary of Occupational Titles (DOT) says that humid conditions are either *not present* or *only present occasionally*, and neither job involves concentrated exposure to such things as fumes, odors, dust and gases. Although an ALJ must address "an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT" before relying on the VE's expert testimony, SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000), there was no conflict between the VE's testimony and the DOT.

Third, giving Johnson the benefit of any doubt that the janitor job might involve concentrated exposure to humidity, there were still a significant number of machine packager jobs in the national economy—178,000—that Johnson could perform. Relatedly, Johnson argues that the ALJ failed to consider a downward adjustment to the number of machine packager jobs available due to his advanced age, citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06. Section 202.06, however, applies only to light work. And the grids governing medium work would dictate "not disabled" for someone of Johnson's age and educational and vocational background.

Moreover, because Johnson had both strength limitations (medium work) and nonexertional limitations (pollutants and humidity), and a finding of "disabled" could not be made on his strength limitations alone, "the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the

15

nonexertional limitations." *Id*. § 200.00(e)(2).  The ALJ followed § 200.00(E)(2) when he asked the VE whether jobs existed in the national economy for an individual of Johnson's age, education, work experience, and residual functional capacity.

We conclude that the ALJ properly relied on the testimony of the VE to conclude that there were a significant number of jobs in the national economy that Johnson could perform with his limitations.

## IV.    CONCLUSION

We affirm the district court's order upholding the Commissioner's denial of benefits.

Entered for the Court


Mary Beck Briscoe
Circuit Judge