**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES A. KIMES,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 19-2144
(D.C. No. 1:18-CV-01064-GBW)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

James A. Kimes appeals from the district court's decision affirming the denial

of his application for Social Security disability benefits.  Exercising jurisdiction

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand for further

proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

**BACKGROUND**

Mr. Kimes, now 65 years old, left school after the 10th grade without earning a G.E.D. He has had a back impairment since 1988. For many years, he worked as a long-haul tractor-trailer truck driver, leaving that work in 2008. He then did relatively short stints as a night watchman and security guard. Mr. Kimes was largely uninsured during his working life, and despite suffering back pain, he was unable to afford medical treatment.

In April 2013, Mr. Kimes applied for disability insurance benefits based on degenerative disc disease, alleging an onset date of January 16, 2011.[1] He was last insured for disability benefits on June 30, 2012. After his application was denied initially and upon reconsideration, he had a hearing before an administrative law judge (ALJ). He testified on his own behalf and offered lay witness testimony from a friend, Arthur Sisneros. A vocational expert (VE) also testified.

The ALJ denied benefits. At Step 1 of the five-step sequential evaluation process, see Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010), the ALJ found that Mr. Kimes had not engaged in substantial gainful activity since his alleged onset date. At Step 2, the ALJ found that he suffered from the severe impairment of degenerative disc disease of the lumbar spine, and at Step 3, he concluded that Mr. Kimes' impairment did not meet or medically equal the severity of a listed impairment. Then he assessed Mr. Kimes with the residual functional capacity

_____

[1] Mr. Kimes also applied for and was granted supplemental security income (SSI) benefits in 2013. His SSI benefits ended when he took early retirement benefits.

2

(RFC) to do medium work with some limitations.  Based on the VE's testimony, the ALJ then concluded at Step 4 that Mr. Kimes could perform his past relevant work (PRW) of a tractor-trailer truck driver.[2]  In the alternative, he proceeded to Step 5, where he found, also based on the VE's testimony, that Mr. Kimes could perform other jobs available in significant numbers in the national economy.  The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.  But the district court reversed, concluding that the ALJ had not followed the proper legal standards for evaluating a treating physician's opinion.

On remand, the ALJ conducted another hearing, receiving testimony from Mr. Kimes and from a different VE.  At the second hearing, Mr. Kimes amended his alleged onset date to June 1, 2012.  The ALJ again denied benefits.  His conclusions as to Steps 1, 2, and 3 remained the same.  At Step 4, he assessed Mr. Kimes with an RFC to perform a limited range of medium work:

- The claimant is able to lift 50 pounds occasionally and lift and carry 25 pounds frequently and push and pull the same;

- The claimant is able to stand and walk for six hours per eight-hour workday and sit for six hours per eight-hour workday with normally scheduled breaks;

- The claimant is able to frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; and

- The claimant is able to occasionally stoop and crouch and frequently kneel and crawl.

---

[2] The night watchman and security guard positions did not qualify as PRW.

3

Aplt. App. Vol. III at 262. Based on the VE's testimony, the ALJ again concluded that Mr. Kimes could perform his PRW as a tractor-trailer truck driver, as such work is generally performed. But he further proceeded in the alternative to Step 5, determining, also based on the VE's testimony, that Mr. Kimes could perform the jobs of automobile detailer and industrial cleaner, which were available in significant numbers in the national economy. The ALJ therefore denied Mr. Kimes' application for benefits. Mr. Kimes did not file exceptions to the ALJ decision, and the Appeals Council did not assume jurisdiction, making the ALJ's decision the Commissioner's final decision on remand. On appeal, the district court affirmed.

## DISCUSSION

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." Id. (citation and internal quotation marks omitted).

Mr. Kimes alleges an onset date of June 1, 2012. He must establish that he was disabled on or before June 30, 2012, the date he was last insured for disability insurance benefits.

4

**I.** **The ALJ did not properly assess Mr. Kimes' PRW at Step 4.**

The ALJ established that Mr. Kimes' only PRW was his work as a tractor-trailer truck driver. The VE opined that Mr. Kimes could perform his PRW, as such work is generally performed, and the ALJ relied on that testimony to deny benefits at Step 4. Mr. Kimes argues that the job of tractor-trailer truck driver requires more sitting than the six hours per workday that the ALJ assessed. He notes his testimony that "all four kinds of long distance driving that he performed (hauling cement, produce, cattle, and gravel) required sitting for much longer than six hours per day." Aplt. Opening Br. at 34. And he states that "[his] report of what the job of trucker driver requires in the way of sitting is consistent with how the job is generally performed." Id. In support, he points out that the Federal Motor Carrier Safety Administration allows drivers to drive up to eleven hours at a time, with only a 30-minute break every eight hours, and that federal regulations allow drivers to drive a total of eleven hours in a fourteen-hour period.

The ALJ must complete three phases at Step 4. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." Id. (citation omitted). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings." Id. (citations omitted).

Here, even assuming that the ALJ properly completed the first phase of Step 4,[3] he faltered at the second phase. At this phase, "[t]o make the necessary findings, the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations." Id. at 1024 (internal quotation marks omitted). It is the Commissioner's responsibility to develop the record as to the demands of a claimant's PRW. Id. In this case, however, the ALJ made no inquiry as to how much sitting the job of tractor-trailer truck driver requires, as it is performed generally.

"Having failed to complete phase two appropriately, the ALJ was unable to make the necessary findings at phase three about [Mr. Kimes'] ability to meet the [physical] demands of his past relevant work despite his [back] impairments." Id. at 1024-25. The ALJ simply informed the VE of the assessed limitations and asked whether a person with those limitations could perform the job of tractor-trailer truck driver, as it is generally performed. "This practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four . . . is to be discouraged." Id. at 1025. "When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." Id.

---

[3] Because we must remand due to the ALJ's failures to properly complete the second and third phases of the Step 4 evaluation and to properly perform the Step 5 evaluation, we do not consider Mr. Kimes' challenges to the ALJ's findings at phase one of Step 4 in detail. On remand, however, the ALJ should ensure that the phase one assessment of Mr. Kimes' RFC employs the correct legal standards and that all findings are supported by substantial evidence.

6

The ALJ did not make findings on the record regarding the physical and mental demands of the job of tractor-trailer truck driver, as it is generally performed. Most importantly in this case, nothing in the record except Mr. Kimes' own testimony establishes how much sitting is required as the job is generally performed. And his testimony indicates that he would be required to sit more than six hours per workday. Accordingly, the ALJ did not employ the correct legal standards, and substantial evidence does not support the Step 4 conclusion that Mr. Kimes could perform his PRW.

**II.    The ALJ's Step 5 determination is not supported by substantial evidence.**

The ALJ alternatively found at Step 5 that Mr. Kimes can perform other jobs available in significant numbers in the national economy. But the record also lacks substantial evidence to support this finding. Tellingly, the Commissioner's response brief does not even attempt to defend it.

The VE testified that Mr. Kimes would be able to perform the jobs of automobile detailer, with 80,000 jobs in the national economy, and industrial cleaner, with 16,000 jobs in the national economy. He could not identify a third job. The VE further stated that his testimony was consistent with the Dictionary of Occupational Titles (DOT). His testimony, however, was not consistent with the DOT (or, more precisely, its companion, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Dep't of Labor 1993) (SCO)). The job of automobile detailer, DOT Code 915.687-034, requires "frequent" stooping, SCO at 133, but the ALJ assessed Mr. Kimes with the ability to do only "occasional"

7

stooping. There is no explanation for the discrepancy between the VE's testimony and the requirements of the SCO. The record thus does not contain substantial evidence supporting the ALJ's determination that Mr. Kimes can perform the job of automobile detailer. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Without automobile detailer, the Step 5 assessment rests on the determination that Mr. Kimes could be an industrial cleaner. Part of the Step 5 determination, however, is a finding that the alternate jobs exist in "significant numbers in the national economy," 20 C.F.R. § 404.1560(c)(1), and the record shows there are only 16,000 industrial cleaner jobs in the national economy. In determining whether the "significant numbers" requirement was satisfied, the ALJ considered both jobs together, for a total of 96,000 jobs. He did not consider whether industrial cleaner alone, with only 16,000 jobs, satisfies the requirement. It is not appropriate for this court to decide, in the first instance, whether a relatively low number qualifies as a "significant number" of jobs. See Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004); Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992). Accordingly, we cannot uphold the denial of benefits based on the Step 5 determination.

## III. On remand, the ALJ should carefully consider Mr. Kimes' RFC.

Mr. Kimes also argues that the ALJ erred in assessing his RFC at phase one of Step 4 by (1) failing to properly weigh his treating physician's opinion,

8

(2) incorrectly weighing Mr. Kimes' testimony, and (3) failing to consider his friend Mr. Sisneros' lay witness testimony. In light of our remand for the reasons discussed above, we do not consider these arguments in detail. But on remand, the ALJ should ensure that the decision employs the proper legal standards for assessing a treating physician's opinion and for weighing a claimant's testimony. The ALJ should also be cognizant of circuit precedent that requires an ALJ to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). Such significantly probative evidence may include lay witness testimony. See Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006).

In Blea, we remanded for further proceedings when an ALJ did not mention the testimony of the claimant's wife, which was uncontroverted and served to corroborate a psychiatric examination of the claimant. See id. We also noted that Social Security Ruling 83-20, 1983 WL 31249, at *3 (1983) "instructs an ALJ to consider other sources of documentation such as testimony from family [or friends] when reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available." Blea, 466 F.3d at 915 (internal quotation marks omitted).

Mr. Sisneros testified that he had known Mr. Kimes for approximately ten years, and that he saw Mr. Kimes several times a week in 2011 and early 2012. He testified that whenever he saw Mr. Kimes, Mr. Kimes was in pain. He was not able to stay sitting, he sometimes he had trouble getting up, and he had difficulty walking.

9

The ALJ discussed Mr. Sisneros' testimony in his first decision, but he did not address it in his second decision. But here, with no medical evidence dating from before the alleged onset date, Mr. Sisneros' testimony about his contemporaneous observations may be of particular relevance in evaluating Mr. Kimes' application. For example, Mr. Sisneros' testimony may serve to corroborate the opinion of Mr. Kimes' treating physician that Mr. Kimes required the ability to alternate sitting and standing at will, as well as Mr. Kimes' testimony about the extent of his pain.

## CONCLUSION

We decline Mr. Kimes' request to issue an order directing an award of benefits. We recognize that this matter already was remanded once, but the agency should have the opportunity to consider relevant matters—including a proper Step 5 determination—in the first instance. Accordingly, we reverse the district court's judgment and remand this matter for further proceedings. On remand, this case shall be reassigned to a different ALJ.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

10