**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 9, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

AMY KAY PARSONS,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 24-6219
(D.C. No. 5:24-CV-00075-STE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Amy Kay Parsons appeals a district court order affirming the Commissioner's denial of disability insurance and supplemental security income benefits. She says the Commissioner failed to evaluate her providers' progress notes as "medical opinions," but these records do not satisfy the governing regulatory definition of a "medical opinion." Accordingly, we exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and affirm the district court's judgment.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Parsons claimed she was disabled by degenerative disc disease, degenerative joint disease, depressive disorder, schizoaffective disorder, anxiety disorder, and chronic pain disorder. After a hearing, an administrative law judge (ALJ) determined she was not disabled at step five of the five-step sequential process for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five-step process). The ALJ reasoned that, despite her severe and non-severe impairments, Parsons retained the residual functional capacity (RFC) to perform a limited range of light work. The ALJ explained that she could not perform her past relevant work, but she could transition to other jobs that exist in significant numbers in the national economy, including jobs as a marker, a garment sorter, and a cleaner/housekeeper. The Appeals Council denied review, and the district court affirmed the Commissioner's decision.

II

"We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (citation and internal quotation marks omitted).

Parsons contends the ALJ incorrectly analyzed three progress notes completed by her treating providers at the Oklahoma Community Mental Health Center. Each note is entitled, "Client Assessment Record" (CAR) (capitalization omitted), and they document in ten domains Parson's feelings, moods, affect, mental processes, substance use, and other factors bearing on her mental health. *See* Aplt. App., vol. 3 at 380-83; *id.*, vol. 6 at 971-75; *id.*, vol. 8 at 1365-67. For each domain, the provider described her problems and assigned a numerical score. Aplt. App., vol. 3 at 380-83; *id.*, vol. 6 at 971-75; *id.*, vol. 8 at 1365-67.

According to the first CAR, which is dated September 23, 2021, Parsons reported to Jill Davis, a licensed clinical social worker, that she had variable moods, high anxiety, trouble sleeping, and depression, among many other things. The CAR states under a heading labeled, "UPDATE," that she had been previously discharged from another facility that treated her for hallucinations. *Id.* at 380. Parsons also reported auditory hallucinations, memory problems, alcohol and marijuana use, arthritis, dysfunctional family relationships, and an outstanding warrant for unpaid fines. *Id.* at 380-83.

The second CAR, which is dated March 15, 2022, was completed by a licensed professional counselor, Pei-Xian Dong. Similar to the first CAR, Parsons reported variable moods, less anxiety, more depression, and trouble sleeping. The second CAR retains the previous heading labeled, "UPDATE," repeating, verbatim, that she had been discharged from another facility that treated her for hallucinations. *Id.* at 971. And although the second CAR noted some differences—for example, Parsons

3

reported no auditory hallucinations—there are several notes and "UPDATE[S]" that repeat, verbatim or nearly verbatim, the same references to memory problems, alcohol and marijuana use, arthritis, dysfunctional family relationships, and an outstanding warrant for unpaid fines. *Id.* at 971-75.

The third CAR, which is dated October 31, 2022, was completed by Christina Seng, a licensed clinical social worker. As with the previous CARs, this third CAR indicates Parsons reported variable moods, depression, anxiety, and trouble sleeping. It also repeats, verbatim, her reports of memory problems and no auditory hallucinations, although it indicates she reported having tactile hallucinations. And although Parsons claimed to have stopped using alcohol and marijuana, the CAR repeats, verbatim, her prior reports of arthritis, dysfunctional family relationships, and an outstanding warrant for unpaid fines.

On appeal, Parsons initially contends the ALJ failed to acknowledge this evidence. But the record refutes her argument because the ALJ discussed the CARs in formulating her RFC. *See* Aplt. App., vol. 2 at 20 (citing Ex. C1F, C18F), 21 (citing Ex. C1F), 22 (citing Ex. C1F, C7F). This discussion satisfies the relevant legal standard. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence," but she must discuss "the uncontroverted evidence [she] chooses not to rely upon and any significantly probative evidence [she] decides to reject." (internal quotation marks omitted)).

Parsons' broader argument is that the ALJ should have analyzed the CARs as medical opinions. A "medical opinion" is defined as "a statement from a medical

4

source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the" ability to perform the physical, mental, and sensory demands of work and adapt to its environmental conditions.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Medical opinions must be evaluated under 20 C.F.R. §§ 404.1520c and 416.920c, which require an ALJ to consider the medical opinion's supportability and consistency with objective medical evidence, among other factors.[1]

The CARs do not satisfy the definition of a "medical opinion" because they do not contain a statement from any of the providers about what Parsons could still do despite her limitations or restrictions.  *See Staheli v. Comm'r*, 84 F.4th 901, 907 (10th Cir. 2023) (concluding that doctor's statements about prognosis were not "'medical opinions' because they did not provide evidence concerning [the claimant's] ability to perform the specific demands of work activities").  The CARs recite what Parsons reported about her feelings, experiences, and circumstances,

---

[1] Parsons incorrectly asserts we must remand because the ALJ failed to assign a weight to the CARs.  Aplt. Br. at 31.  But she applied for disability benefits after March 27, 2017, when the Social Security Administration updated the rules for considering medical evidence.  "Under the revised procedures, the ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from a claimant's medical sources." *Staheli v. Comm'r*, 84 F.4th 901, 905 (10th Cir. 2023) (brackets and internal quotation marks omitted).  "Instead, the ALJ evaluates opinions using five factors identified in the regulation:  supportability; consistency; relationship with the claimant; specialization; and other factors, such as a medical source's familiarity with the other evidence in a claim." *Id.* (internal quotation marks omitted).  Thus, even if the CARs qualified as medical opinions, which we conclude they do not, the ALJ was not required to assign a weight to them.

without any connection or correlation to how those things impacted her level of functioning.  Parsons acknowledges that some of the domains have nothing to do with her feelings, symptoms, or level of functioning.  *See* Aplt. Br. at 17, n.2.  For example, she reported in all three CARs, under the domain entitled "LEGAL," that she had an outstanding warrant for unpaid fines, Aplt. App., vol. 3 at 383; *id.*, vol. 6 at 974-75; *id.*, vol. 8 at 1367.  But the existence of her outstanding warrant told the ALJ nothing about what she could still do despite her limitations.

Parsons points out, however, that the CARs contain numerical scores for each of the ten domains.  The scores range from 20 to 39, but there is no explanation what those scores mean.  Nevertheless, Parsons refers us to a document entitled, "The Prior Authorization Manual, [which is] a resource promulgated by [the Oklahoma Health Care Authority]."  Aplt. Br. at 15.  She says the scores in the CARs "correspond[] to detailed descriptions of functioning as identified within the Prior Authorization Manual."  *Id.* at 16.

But Parsons did not provide the Prior Authorization Manual to the ALJ, nor did she allege it translated the numeric scores in the CARs to a level of functionality. *See Wall*, 561 F.3d at 1062 (explaining that a claimant must develop her case before the ALJ, who "is generally entitled to rely on the claimant[] to structure and present claimant's case in a way that the claimant's claims are adequately explored").  And because the Prior Authorization Manual is not in the administrative record, we may not consider it now.  *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (noting evidence not before the agency "plays no role in judicial review").  Although

6

Parsons contends the Prior Authorization Manual is not "evidence" under 20 C.F.R. §§ 404.1513(a)(1)-(5) and 416.913(a)(1)-(5), it is "information . . . from a nonmedical source . . . about an[] issue in [her] claim," 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Indeed, Parsons relies on it to translate the numerical scores in the CARs to what she contends is a level of functionality, so it was incumbent upon her to provide it to the ALJ.

In any event, the scores were based on Parsons' own reports of her feelings, experiences, and circumstances as described in each domain. Neither those reports, nor the providers' descriptions of them, contain a statement about what Parsons could still do despite her limitations or restrictions. Consequently, the CARs do not qualify as medical opinions, and the ALJ was not required to analyze them as medical opinions.

III

The district court's judgment is affirmed.

Entered for the Court

Bobby R. Baldock<br/>Circuit Judge