**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**November 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

RODOLFO RIVERA, JR.,

　　Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

　　Defendant - Appellee.

No. 22-1026
(D.C. No. 1:20-CV-02570-RMR)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Rodolfo Rivera, Jr., appeals pro se from a district court order affirming the

Commissioner's denial of Social Security disability insurance benefits.[1]  Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We liberally construe Mr. Rivera's pro se filings, but we do not act as his advocate.  *See Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013).

I

Mr. Rivera sought disability benefits for back, vision, and respiratory problems, among other ailments. After a hearing, an administrative law judge (ALJ) evaluated Mr. Rivera's application according to the agency's five-step sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).[2] At step two of the process, the ALJ determined Mr. Rivera was severely impaired by degenerative disc disease of the cervical spine with radiculopathy, carpal tunnel syndrome of the left upper extremity, chronic rhinitis, and obesity. But at step four of the evaluation process, the ALJ concluded Mr. Rivera was not disabled because he

---

[2] In *Wall*, we outlined the five-step process used by the Social Security Administration to determine whether a claimant is disabled:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

561 F.3d at 1052 (citations and internal quotation marks omitted).

retained the residual functional capacity (RFC) to perform a reduced range of "medium work," including his past relevant work in irrigation system maintenance.[3]

The Appeals Council declined review, and the district court affirmed the ALJ's decision.  Mr. Rivera then timely appealed.

II

"We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the

---

[3] "Medium work" is defined as follows:

> Medium Work.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 1567(c).  Social Security Ruling 83-10 further explains:

> *Medium work.*  The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

> . . . .

> In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Soc. Sec. Rul. 83-10, 1983 WL 31251, at *6.

3

correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (citation and internal quotation marks omitted).

Mr. Rivera contends the ALJ erred in 1) finding he no longer uses inhalers to treat his respiratory condition, 2) evaluating his vision impairment, and 3) assessing his RFC without fully accounting for his back pain. We consider these arguments in turn.[4]

### 1. Use of Inhalers

Mr. Rivera contends the ALJ erroneously found he no longer uses inhalers. The ALJ stated, "[T]he claimant testified that he no longer uses inhalers." R. at 39-40. Mr. Rivera disputes this finding. According to Mr. Rivera, he indicated during the hearing that he "was out of inhalers and needed a refill." Aplt. Opening

---

[4] In the district court, Mr. Rivera also argued the ALJ erred at step four by failing to account for all of the demands of Mr. Rivera's past work in irrigation system maintenance. That argument is not advanced in the opening brief, so we do not consider it. *See Keyes-Zachary*, 695 F.3d at 1161 (explaining that appellate review is confined to the issues adequately briefed on appeal).

4

Br. at 10. But that was not Mr. Rivera's testimony. The ALJ asked Mr. Rivera, "[A]re you still on the inhalers, other medications for . . . breathing specifically?" R. at 69. Mr. Rivera replied, "No. No." *Id.* This testimony demonstrates that he denied using inhalers, not that he needed to refill his prescriptions. Later during the hearing, the ALJ recalled that Mr. Rivera had "mentioned . . . not using inhalers anymore," *id.* at 75, and Mr. Rivera did not clarify his earlier testimony or correct the ALJ. Under these circumstances, we conclude substantial evidence supports the ALJ's finding that Mr. Rivera testified he no longer uses inhalers.

   *2. Step Two: Vision Impairment*

   Mr. Rivera challenges how the ALJ evaluated his vision impairment at step two. We first outline the governing legal principles. We then discuss how the ALJ evaluated Mr. Rivera's vision impairment and consider two arguments Mr. Rivera advances challenging the ALJ's analysis.

   *a. Governing Step-Two Principles*

   At step two of the sequential evaluation process, an ALJ must consider "whether a claimant has a medically severe impairment or impairments." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Step two involves a "de minimis" showing because "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (brackets and internal quotation marks omitted). "The step-two severity determination is based on medical factors

5

alone, and does not include consideration of such vocational factors as age, education, and work experience." *Id.* (internal quotation marks omitted). Neither is the step-two severity determination based on a claimant's "statement of symptoms"; rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. As long as an ALJ finds at least one severe impairment at step two, the ALJ must proceed with the sequential evaluation process and evaluate the limiting effects of all impairments, both severe and non-severe, at subsequent steps of the evaluative process. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (explaining that at step two, 20 C.F.R. § 404.1520(a)(4)(ii) requires only one severe impairment, and if established, the ALJ must proceed to evaluate the limiting effects of all impairments, severe and non-severe, during subsequent steps under § 404.1545(e)).

b. *ALJ's Evaluation of Mr. Rivera's Condition*

The ALJ recognized Mr. Rivera had been diagnosed with "unspecified macular degeneration," which the ALJ deemed a medically determinable, but non-severe, impairment. R. at 36. Mr. Rivera's macular degeneration and several other conditions were non-severe impairments, the ALJ found, because there was "no evidence of any ongoing functional limitations from these impairments due to the limited nature of [his] complaints, the good response to treatment, or the lack of any evidence of any functional limitations for any 12-month period of time." *Id.* at

6

36-37. Nonetheless, the ALJ still "consider[ed] any potential effects these impairments might cause or contribute to . . . the [RFC]." *Id.* at 37.

The ALJ also observed Mr. Rivera had been "'diagnosed' with a number of symptoms," including "unspecified subjective visual disturbance." *Id.* The ALJ stated that "[s]ymptoms are not, on their own, medically determinable impairments," although "to the extent these symptoms correlate to [Mr. Rivera's] medically determinable impairments, they have been considered along with [the medically determinable impairments] in evaluating the severity of those medically determinable impairments." *Id.* Thus, the ALJ ultimately found at step two that

- Mr. Rivera's macular degeneration was not a severe impairment;

- That his "unspecified subjective visual disturbance" was not, on its own, a medically determinable impairment; and

- Mr. Rivera had four other severe impairments.

*See id.* at 36-37. The ALJ therefore proceeded with the subsequent steps of the sequential evaluation process. *See id.* at 37-42.

### c. Mr. Rivera's Arguments

On appeal, Mr. Rivera challenges the ALJ's determination on two grounds.[5]

---

[5] Mr. Rivera contends the ALJ contradicted himself by initially finding Mr. Rivera had non-severe impairments, yet later acknowledging he had other severe impairments. *See* Aplt. Opening Br. at 5. We disagree. As we have indicated, the ALJ found at step two that Mr. Rivera had four severe impairments. *See* R. at 36. The ALJ then separately identified Mr. Rivera's non-severe impairments. *See id.* at 36-37. The ALJ proceeded to step three and evaluated whether any of Mr. Rivera's severe impairments satisfied the criteria of a listed impairment and concluded they did not. *See id.* at 37. Thus, the ALJ continued to step four and reiterated that Mr. Rivera had four severe impairments. *See id.* at 39. We discern no contradiction.

First, Mr. Rivera disputes the ALJ's ruling that "'[s]ymptoms are not, on their own, medically determinable impairments.'" Aplt. Opening Br. at 7 (quoting R. at 37). Relying on attachments to his opening brief, Mr. Rivera seems to contend there is ample evidence to establish a severe, medically determinable impairment.[6] Mr. Rivera appears to be contending that his unspecified subjective visual disturbance was a severe medically determinable impairment, and the ALJ erroneously determined otherwise. This argument is unavailing.

As the ALJ correctly recognized, a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source"; it cannot be established by a claimant's "statement of symptoms." 20 C.F.R. § 404.1521. But as we explain, Mr. Rivera's "unspecified subjective visual disturbance" was based on a statement he made about his own symptoms. Although the ALJ suggested it might have been correlated with Mr. Rivera's macular degeneration (and Mr. Rivera does not contend otherwise), there is no evidence it was some other condition. Rather, the record indicates it was the label Mr. Rivera's eye doctors used to describe the symptoms Mr. Rivera reported.

---

[6] Some of the attachments to Mr. Rivera's opening brief are not part of the agency record. Several documents actually post-date the ALJ's decision. We do not consider evidence that was not part of the record and considered by the agency. *See Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970) (explaining that judicial review is limited to evidence in the agency record); *accord Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (recognizing that if new evidence is presented to and rejected by the Appeals Council, it generally "plays no role in judicial review").

As Mr. Rivera points out, he saw Dr. Steven Witmarsh for his eye problems. *See* Aplt. Opening Br. at 7. Dr. Witmarsh referred Mr. Rivera for an optometry evaluation with a "[p]rovisional [d]iagnosis" of "[u]nspecified subjective visual disturbances." R. at 371. The referral stated that Mr. Rivera had "a history of macular degeneration, now with persistent intermittent visual changes, please evaluate and treat[.]" *Id.* Mr. Rivera was referred to Dr. Lori Hamm, who noted the "[r]eason for [the a]ppointment" was "[u]nspecified subjective visual disturbances." *Id.* at 367. The note explained that on screening, Mr. Rivera "report[ed] getting a film that comes over [his] eyes while reading. Both eyes, intermittent frequency, and duration described as for the past 6 months." *Id.* at 367-68. But the note specifically identified Mr. Rivera's "[e]ye disorder/disease" as early age-related macular degeneration. *Id.* at 368. And although Mr. Rivera's exam indicated mostly normal anatomical findings, examination of his retina revealed abnormal macula, which was assessed as "[n]onexudative age-related macular degeneration." *Id.* at 370.[7] Indeed, notwithstanding the provisional diagnosis of "[u]nspecified subjective visual disturbances," only macular degeneration was listed among the note's findings. *See id.* at 370-71. As the agency record confirms, the objective medical evidence indicated an anatomical abnormality assessed as macular degeneration, which the

---

[7] The exam also detected abnormalities of the lenses, and although there were no ocular findings of cataracts, the note concluded there were "[m]ild cataracts," *see* R. at 368, 370. At step two, the ALJ found that Mr. Rivera's "bilateral cataracts" were a non-severe impairment. *Id.* at 36. Mr. Rivera does not challenge the ALJ's evaluation of his cataracts.

ALJ determined was a medically determinable impairment. The term "[u]nspecified subjective visual disturbances" was merely the label Dr. Witmarsh and Dr. Hamm used to describe the symptoms reported by Mr. Rivera. A statement of symptoms cannot establish a medically determinable impairment, 20 C.F.R. § 404.1521, however. The ALJ did not err in declining to designate Mr. Rivera's "unspecified subjective visual disturbance" a medically determinable impairment.

Mr. Rivera's second argument is also unavailing. He contends the ALJ should have found his macular degeneration was a severe impairment. But at step two, "a claimant need only establish, and an ALJ need only find, one severe impairment," *Allman*, 813 F.3d at 1330. "The reason is grounded in the Commissioner's regulation describing step two, which states: 'If you do not have a *severe* medically determinable physical or mental impairment or a combination of impairments that is severe, we will find that you are not disabled.'" *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii) (ellipses omitted)). The plain language of this regulation requires only one severe impairment to avoid the denial of benefits at step two. *Id.* Thus, so long as a claimant establishes at least one severe impairment, the ALJ cannot deny benefits at step two and must proceed with the sequential evaluation process and account for the limiting effects of all impairments, even those that are not severe.

Here, the ALJ found Mr. Rivera had four other severe impairments. Under these circumstances, the ALJ appropriately proceeded with the sequential evaluation process, recognizing he was bound to "consider any potential effects [the non-severe]

10

impairments might cause or contribute to . . . the [RFC]." R. at 37. The ALJ also considered Mr. Rivera's symptoms, including his subjective visual disturbance, "in evaluating the severity of [his] medically determinable impairments." *Id.* Because the ALJ found at least one severe impairment and proceeded with the evaluative process, the ALJ did not err in his step-two evaluation. *See Allman*, 813 F.3d at 1330 ("[T]he [ALJ's] failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

 3. *Step Four: Mr. Rivera's RFC & the Credibility of his Pain Allegations*

 At step four, the ALJ determined Mr. Rivera had the RFC for a reduced range of medium work that allowed him to:

- occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds;

- stand and/or walk 6 hours in an 8-hour workday;

- sit 6 hours in an 8-hour workday;

- never climb ladders, ropes, or scaffolds;

- frequently stoop or climb ramps and stairs;

- frequently reach, handle, finger, feel or operate hand controls with his bilateral upper extremities;

- tolerate no more than frequent exposure to pulmonary irritants; and

- have no exposure to hazards.

R. at 38. In assessing this RFC, the ALJ determined Mr. Rivera's "impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these

11

symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 39.

Mr. Rivera contends the ALJ improperly discounted his allegations of neck and back pain when assessing his RFC. To better understand this contention, we explain the relationship between the ALJ's RFC assessment and the ALJ's evaluation of a claimant's credibility.

In the first phase of step four, an "ALJ must evaluate a claimant's physical and mental [RFC]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence, including a claimant's credible allegations of pain. *See id.* §§ 404.1529, 404.1545(a)(3). Because an ALJ's credibility evaluation helps "the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

We employ a deferential standard when reviewing an ALJ's credibility finding. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (brackets and internal quotation marks omitted). An "ALJ must articulate specific reasons for questioning the claimant's credibility where subjective

pain testimony is critical." *Id.* (internal quotation marks omitted). But we cannot reweigh the evidence or "substitute our judgment for that of the [ALJ]." *Id.*

When evaluating a claimant's allegations of pain, the ALJ must determine:

(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 F.3d at 1166-67.

Here, the ALJ recognized Mr. Rivera had a pain-producing impairment. This was based on diagnostic imaging indicating Mr. Rivera had progressive degenerative disc disease at the C4/5, C5/6, and C6/7 vertebrae, with straightening of the normal lordotic curvature of the cervical spine, which might have been secondary to positioning or muscle spasm. R. at 379-80. The ALJ also found Mr. Rivera's impairments could be expected to cause some of his symptoms, including his pain. *See id.* at 39. The question then became whether his pain was disabling. On that score, the ALJ found that Mr. Rivera's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* Mr. Rivera disputes this finding, but the ALJ's analysis was sound.

An ALJ evaluating the credibility of a claimant's allegations of pain should consider:

a claimant's persistent attempts to find relief for [his] pain and [his] willingness to try any treatment prescribed, regular use of crutches or a

13

cane, regular contact with a doctor, and the possibility that
psychological disorders combine with physical problems and the
claimant's daily activities, and the dosage, effectiveness, and side
effects of medication.

*Keyes-Zachary*, 695 F.3d at 1167 (internal quotation marks omitted).  The ALJ must
"set[] forth the specific evidence he relies on in evaluating the claimant's credibility"
but need not engage in "a formalistic factor-by-factor recitation of the evidence."
*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

We conclude the ALJ closely and affirmatively linked his adverse credibility
finding to substantial evidence in the record, providing "specific reasons" for
discounting the severity of Mr. Rivera's pain symptoms, SSR 16-3p, 2017 WL
5180304, at *10 (Oct. 25, 2017).  The ALJ first considered Mr. Rivera's medications,
noting they included ibuprofen, oxycodone, gabapentin, and meloxicam, and
recognizing the gabapentin helped his pain symptoms but "[made] him feel
different."  R. at 39.  The ALJ observed Mr. Rivera's treatments were "generally
successful," including his use of medication.  *Id.* at 41.  The ALJ supported this
finding with substantial evidence.[8]  The ALJ also recognized Mr. Rivera testified that
his medications helped his neck and back pain, *see id.* at 74, which further supports
the ALJ's decision to discount Mr. Rivera's testimony concerning the limiting effects

---

[8] *See, e.g., id.* at 443 (June 15, 2017, treatment note indicating neck pain but he
was "good to go" if he took pain medication (internal quotation marks omitted)); *id.*
at 487 (July 18, 2016, treatment note continuing medication and adding a second
medication); *id.* at 742 (Aug. 2, 2018, treatment note indicating pain medications
were working and authorizing refill of prescriptions); *id.* at 750 (June 26, 2018,
treatment note authorizing refill of pain medication).

of his pain symptoms, *see White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) ("[Claimant's] admission that medication relieved some of her pain . . . further support[s] [the ALJ's] belief that she was capable of performing more extensive work activities than she acknowledged.").

The ALJ also observed Mr. Rivera testified his pain was alleviated with use of a TENS unit. *See* R. at 74 (testifying during the hearing that "the TENS unit has been really awesome"). And the ALJ explained Mr. Rivera benefited from physical therapy and dry needling, *see id.* at 380-87 (physical therapy notes indicating Mr. Rivera benefitted most from dry needling), and although he was offered a surgery for his condition at C5/6, Mr. Rivera was unwilling to try that treatment, *see id.* at 64-65 (testifying during the hearing that "when the painkillers stop working . . . or if I get to a point where I . . . can't endure it no more . . ., then[] you can go ahead and cut me open").

The ALJ discussed Mr. Rivera's examination findings, acknowledging that some treatment notes confirmed his pain symptoms. *See, e.g.*, *id.* at 443 (June 15, 2017, treatment note indicating neck pain but he was "good to go" if he took pain medication (internal quotation marks omitted)); *id.* at 469 (Mar. 7, 2017, treatment note indicating neck and back symptoms and advising him to continue medication, check diagnostic imaging, and refer to physical therapy upon his request); *id.* at 487 (July 18, 2016, treatment note indicating neck and upper back pain to be treated with medication, heat, stretching, and massage). Yet the ALJ also recognized other exam findings were largely normal and sometimes indicated Mr. Rivera had no pain or

15

tenderness at all in his back or neck. *See, e.g., id.* at 398 (Dec. 14, 2017, treatment note indicating no back pain or neck tenderness); *id.* at 419 (Nov. 29, 2017, treatment note indicating normal neck findings); *id.* at 424-25 (Oct. 30, 2017, treatment note indicating neck was normal with no back tenderness); *id.* at 505 (Apr. 1, 2016, treatment note indicating no decrease in neck suppleness).

The ALJ then discussed observations made by Mr. Rivera's medical providers during his examinations. The ALJ recognized one provider observed Mr. Rivera's straight-leg raise test was normal. *See* R. at 482 (Sept. 20, 2016, treatment note indicating negative straight-leg raise tests). The ALJ also noted another provider observed Mr. Rivera's gait, movements, reflexes, and strength were all normal. *See id.* at 412 (Dec. 14, 2017, treatment note indicating normal findings in each category).

Finally, the ALJ discounted Mr. Rivera's allegations of pain given his "good level of daily activities." *Id.* at 40. The ALJ explained Mr. Rivera had reported to a consultative examiner that he was able to get in and out of bed, drive, bathe, cook and clean for himself, and typically spent his days reading. *See id.* at 656. The ALJ also noted Mr. Rivera completed a disability report indicating he could perform his own personal care tasks, drive, use a computer, manage his finances, do laundry, go out to eat, and attend church. *Id.* at 222-24. After examining the record as a whole, we are persuaded the ALJ closely and affirmatively linked his credibility finding to substantial evidence, which we have no authority to reweigh. *See Hackett*, 395 F.3d at 1172-73.

III

The district court's judgment is affirmed.

Entered for the Court


Veronica S. Rossman
Circuit Judge